## PHILAD. & R. R. CO. v. JOHN B. LOVE.

ERROR TO THE COURT OF COMMON PLEAS NO. 2 OF PHILADEL-
PHIA COUNTY.

Argued April 1, 1889—Decided April 15, 1889.
[To be reported.]

A director of a corporation who voted against a reconstruction plan to reduce the value of the corporate securities. recommended by the board to the holders for their adoption, is not estopped as an individual by the action of the board, although his opposition to its action was not made known to the public.

Before STERRETT, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 158 July Term 1888, Sup. Ct.; court below, No. 320 December Term 1887, C. P. No. 2.

An action of assumpsit was brought in January, 1888, by John B. Love against the Philad. & Reading R. Co., to recover interest due on various bonds of the Schuylkill Navigation Co., payment of which had been guaranteed by the Philad. & Reading Railroad Co.

The plaintiff's statement set out the amounts of interest claimed to be due on the various obligations, the form of the bonds and coupons, and the indorsements of guaranty by the defendant company. It contained the necessary averments, and a claim for interest on the sums stated to be due, from the dates when they became due.

The affidavit of defence, which was made by the treasurer of the defendant company, in its material parts was as follows :

11. The plaintiff cannot recover interest upon any of the sums of money mentioned in article four of the said statement from the respective dates, when the same became due and payable. He cannot recover interest upon the coupons of the $67,000 coupon bonds of the Schuylkill Navigation Company, loan of 1895, mentioned in the said statement, because the said suit is not against the Schuylkill Navigation Company upon the said coupons, but it is upon the guaranty of this defendant for the payment of the principal and interest of the obligations to which the said coupons are attached. He cannot recover interest upon any of the other sums mentioned in said article of the said statement, because all the several sums demanded are for interest upon certain registered obligations of the said Schuylkill Navigation Co., and no interest can be recovered on the interest due on the said obligations.

12. The said plaintiff cannot recover at all in this suit any of the sums of money claimed by him, for the following reasons:

In June, 1884, the defendant became insolvent and certain foreclosure proceedings, under various mortgages given by it, were commenced in the Circuit Court of the United States for the Eastern District of Pennsylvania. Under these proceedings receivers were appointed, who entered upon the possession of all its property and franchises and continued to operate the same until they were lately discharged. During this time a plan for the financial reorganization of this defendant was proposed by a board of trustees, called the reconstruction trustees, who had charge of the said subject on behalf of the creditors of this defendant and the defendant itself. The plan comprehended a new settlement of all money obligations of this defendant, whereby it was proposed to put it upon a sound financial basis.

A very large part of the obligations of this defendant consisted of fixed rentals of leased lines, and its guaranties of the obligations of the companies leasing said lines. Prominent among this class of obligations were the obligations of this defendant to the Schuylkill Navigation Co. and the holders of its stock and bonds. This defendant was bound by the terms of the lease of the Schuylkill Navigation Co., made July 12, 1870, to pay an annual rent of $655,000, and it had guaranteed the payment of the annual interest of the obligations of the

said navigation company to the amount of many millions of dollars. No plan for the reorganization of the defendant company could be successful or result in a permanent advantage which did not embrace a settlement of the obligations of this defendant to the Schuylkill Navigation Co., and its stockholders and bondholders, and a reduction of the amount which this defendant was bound to pay under said lease and guaranties.

Between March 3, 1887, and June 23, 1887, numerous meetings, having for their object such a settlement between this defendant and the said navigation company, and its stockholders and bondholders, were held, which were attended by the board of managers of the said navigation company, the advisory committee of its stockholders and bondholders, the president and receivers of the said navigation company, and their counsel, and by the president, receivers and managers of the Philadelphia & Reading R. Co., and by the said board of reconstruction trustees ; the fact that such meetings were being held, and that the subject of such meetings was an endeavor to agree upon some such plan of settlement, being published from time to time in the newspapers of the day. These meetings resulted in a proposition made by the said board of reconstruction trustees to the stockholders and bondholders of the said navigation company for the funding or exchange of the stock and bonds of the said navigation company. . . . .

It was of vital importance in order to save the property and franchises of this defendant from sale under the foreclosure proceedings before alluded to, and a consequent disintegration of the same, and to prevent the sacrifice of the total value of a large part of the securities of this defendant, and particularly to avoid a ruinous sacrifice of the securities of the said navigation company, guaranteed by this defendant, that the said plan should be adopted and the said offer of settlement be accepted by practically the entire body of the creditors of the said navigation company. In this way only could the reorganization of this defendant be made effectual; and, in order to insure such a result, the said offer was accompanied with the condition that the board of managers of the said navigation company would adopt a resolution approving its terms and recommending its acceptance by the stockholders and bondholders of that company.

The said John B. Love was at this time one of the board of managers of the said Schuylkill Navigation Co., and he had participated in the meetings held as aforesaid, between March 3, 1887, and June 23, 1887. He was known to be one of the large holders of the securities of the said navigation company.

The said proposition came before the said board for acceptance or rejection at a meeting held June 23, 1887, at which meeting there were present the president of the company, Frederick Fraley, and George Brooke, Samuel G. Thompson, John N. Hutchinson and the plaintiff, John B. Love, managers. The minutes of the said meeting state that a general discussion ensued, participated in by every member of the board; the president and Messrs. Brooke and Thompson approving of the proposed terms of settlement, and Messrs. Hutchinson and Love opposing the same. The other two members of the board, Messrs. Thomas R. Patton and C. W. Wharton, were absent; Mr. Wharton, however, having left a letter, which was submitted at the said meeting, agreeing to the plan of settlement. The minutes of the said meeting further state that the terms of the offer for settlement having been duly considered, it was

" Resolved, That the terms of the said settlement, proposed under date of June 22, 1887, be and they are hereby recommended to the stockholders and loan-holders of this company for acceptance.

" Resolved, That the Girard Life Insurance, Annuity and Trust Company of Philadelphia be and it hereby is appointed the depository to receive and hold the securities for exchange under the said plan of settlement, that company having arranged that the deposits shall be made and certificates of receipt issued at the office of the Schuylkill Navigation Co.

" Resolved, That the stockholders and bondholders of this company be and they are hereby requested to deposit their certificates with the said Girard Life Insurance, Annuity and Trust Company, for the purposes of the exchange in accordance with the terms of said offer of settlement."

The vote upon the said resolutions is not stated in the minutes, but I am informed that Messrs. Fraley, Brooke and Thompson voted for the resolutions, and Messrs. Hutchinson and Love voted against them.

Immediately thereupon a circular containing the said offer

of settlement of June 22, 1887, together with a copy of the proceedings of the board of managers of the said navigation company and a notification from the Girard Life Insurance, Annuity and Trust Company, was issued and duly circulated among the stockholders and bondholders of the said navigation company and was also published in the newspapers of the day, in order that the stockholders and bondholders of the said navigation company should be notified thereof and that the greatest possible amount of the said securities of the said company should be obtained for deposit in accordance with the said plan.

On October 25, 1887, at a meeting of the board of managers of the said navigation company, at which Messrs. Brooke, Patton, Love and Thompson and President Fraley were present, the president stated that he had called the meeting at the request of the reconstruction trustees, who thought that some action should be taken by the board of managers of the said navigation company, requesting their security holders who had not yet deposited their securities to do so. A general discussion ensued, participated in by every member present, at the conclusion of which another circular was adopted:

" *To the Holders of the Securities of the Schuylkill Navigation Company :*

" The Board of Reconstruction Trustees of the Philadelphia and Reading Railroad Company have declared their intention of accepting the securities of the Schuylkill Navigation Company, which have been deposited under the offer of settlement dated June 22, 1887.

" The Board of Managers of this company recommended to the holders of all the securities the acceptance of this offer of settlement at the time of its issuance.

" In view of the large deposits made by loan holders and stockholders, the Board call the attention of those who have not deposited to the amount already made, and to the recommendation hitherto made by this Board."

\* \* \* \* \* \* \* \*

The said plaintiff, who has sued upon $14,400 of the boat and car loan of 1913, was the owner of an additional amount of $4,500 of the same loan, and he was also the owner of five hundred shares of the preferred stock of the said navigation company, and of $4,000 of the convertible mortgage loan of

1907. All these securities he has deposited with the said trustee under said plan.

This defendant therefore alleges that the plaintiff in this case, by reason of his position as a manager of the Schuylkill Navigation Co., is bound by the published action of the said board of managers, and that he therefore must be taken to have recommended to all his fellow bondholders that they should accept the terms of the said settlement and deposit their securities in accordance therewith; that he is estopped from now alleging to the contrary and suing himself upon his own securities not deposited, in accordance with such recommendation, under said plan. Although, in point of fact, the said plaintiff voted in said board against the adoption of the said plan, there was no announcement of any kind to the stock- and bondholders of the Schuylkill Navigation Co. thereof; but, on the contrary, the said plan and the said resolutions of the said board of managers of the said navigation company were publicly promulgated only as aforesaid. It was, indeed, only in consequence of the influence of the action of the said board of managers of the said navigation company that so large an amount of its securities was deposited as aforesaid, and it has been in consequence of this public action of the said board of managers of the said navigation company that the said plan of reorganization of this defendant became finally successful. It has been in consequence of the said action and of the deposits of the securities of said navigation company by so large a number of the stockholders and bondholders of said company that the said securities were saved from ruinous sacrifice. This defendant is now entirely solvent and is able and will, it is expected, be always able hereafter to meet all its lawful obligations, including all securities of the Schuylkill Navigation Co. which it may have guaranteed, but which may not have been actually deposited under the said plan of reorganization.

This defendant does not set up any defence to the lawful claims of holders of said securities not in such a position as this plaintiff, and who did not accept the said settlement, but it asserts that the plaintiff in this case is barred by the acts above set forth from recovering upon the claims made in this suit. He cannot recover upon claims which this defendant has become able to meet only in consequence of the concessions made

by his fellow stockholders and bondholders, which concessions were brought about by his own action as one of the board of managers of the said navagation company in the manner hereinbefore particularly set forth.

The plaintiff took a rule for judgment for want of a sufficient affidavit of defence, and after argument, the court, HARE, P. J., ruling that " The plaintiff cannot be deprived of his rights by the action of a board of which he is a member, unless he concurs: it would be detrimental frequently to the success of a plan such as this, if not impracticable, that a dissenting member of the board should, in order to establish his individual rights as a non-assenting holder, be expected to publish the fact of his dissent to the general public," made the rule absolute, and judgment was entered for the plaintiff for $16,591.08, including interest on the interest coupons set out in plaintiff's statement from the maturity thereof. Thereupon the defendant took this writ, assigning for error the order making absolute the rule for judgment for want of a sufficient affidavit of defence, and the entry of judgment as recited.

*Mr. Thomas Hart, Jr.*, for the plaintiff in error:

1. The reorganization of the Philadelphia & Reading R. Co. could not have been successfully accomplished without a great concession by the holders of the Schuylkill Navigation securities. This was well known, and the action of the board of directors of that company to which all holders look, was awaited with great expectation and interest. A settlement was reached between the negotiating parties and it was vital that it should be accepted by the great body of the creditors of the navigation company without delay. The plaintiff was a member of this board, and he had participated in the meetings and negotiations which preceded the settlement and resulted in it. This fact, and that he was a very large holder of the securities affected, was also well known.

2. On the day following the agreement of June 22, 1887, the board of managers of the Schuylkill Navigation Co. issued a circular stating that at a meeting of the board held that day, it was resolved that the settlement be recommended to the stockholders for acceptance, and provision was made for the receipt

of the securities thereunder. Nothing was published or put forth other than this circular, and if an inquiring stockholder or bondholder had looked at the minutes of the meeting of the board held June 23, 1887, he would have only been informed that a general discussion had been had, and that the plaintiff and another opposed the proposition. For all that appears on the minutes, for there is no statement of the vote, any one might very well conclude that the opposition of Messrs. Hutchinson and Love had been overcome, and that the resolutions were adopted by a unanimous vote.

3. More than this, upon October 25, 1887, another meeting took place which this plaintiff attended, in consequence of which another circular was published as emanating from the board calling the attention of all those creditors, who had not deposited their securities, to the original proposition, and strongly recommending such to accept the same at once. A statement was given showing that out of $12,457,134 of securities, those holding $11,785,333 had accepted the plan. There is no pretence that the plaintiff did not vote for the resolution adopting this circular. More than this, if an inquirer had asked of the Girard Life Insurance, Annuity and Trust Company, the depository under the plan, if Mr. Love was depositing his securities, the answer would have been in the affirmative, for he did deposit $4,500 of the very boat and car loans now sued on, five hundred shares of preferred stock, and $4,000 loan of another issue.

4. It must be conceded that every creditor of the Schuylkill Navigation Co. had a right to look to the board of directors of that company for guidance in a matter of this kind. The subject was full of difficulty, and it necessarily had to be dealt with by representatives of the various interests. An advisory committee of the stockholders and bondholders had assisted in the negotiations, but its functions had terminated. The plan was dependent upon its acceptance by the board of managers of the Schuylkill Navigation Co., and to it the eyes of the security holders were turned. "Directors occupy towards the corporation which they represent positions of trust and confidence, and owe to it all the duties which persons occupying such positions ordinarily owe to their cestuis que trust. . . . . And it must be remembered that the body corporate not only

represents the interests of all the shareholders, but is also bound to regard the interests of the creditors of the corporation, whom in a certain sense it also represents:" Taylor on Corp., §§ 612, 613; 1 Morawetz on Corp., § 516; Wardell v. Railroad Co., 103 U. S. 651.

5. Certainly if the plaintiff had voted for the reconstruction plan, he would be estopped from maintaining this action: Stone v. Great Western Oil Co., 41 Ill. 85; Thatcher v. People, 98 Ill. 632; Erie & W. Plankroad Co. v. Brown, 25 Pa. 156; Stoystown etc. Co. v. Craver, 45 Pa. 386; Granger v. Grubb, 7 Phila. 350; Gordon v. Preston, 1 W. 385. He must, therefore, be taken as giving the plan his assent and approval by allowing the public announcements of its adoption to be made, without any statement of his own intended course of action: Ridgefield & N. Y. R. Co. v. Reynolds, 46 Conn. 375; Patterson v. Lytle, 11 Pa. 53; Commonwealth v. Moltz, 10 Pa. 527; Ayres v. Wattson, 57 Pa. 363.

*Mr. S. Davis Page* (with him *Mr. Edwin P. Allinson* and *Mr. Boies Penrose*), for the defendant in error:

1. There is no analogy between the resolution passed by the board of managers on June 23, 1887, and a contract by a board of directors on behalf of the corporation. The offer contained in the circular of June 22, 1887, is addressed to such individual stockholders and bondholders as deposited their securities in the mode pointed out. Nothing was to be done by the corporation or its board of managers. The fact that they recommended the scheme and selected a depository cannot in itself make that which would otherwise be a contract with each individual stockholder and bondholder who deposited his certificates, a contract with the corporation. The selection of a depository and the recommendation by the board, were both collateral to the contract, and formed no part of the condition upon which the promisor agreed to be bound. "To render a consideration valid, it must be the express or implied condition on which the obligation of the promise depends:" Hare on Contracts, 212.

2. In passing the resolutions of June 23, 1887, the board of managers of the Schuylkill Navigation Company manifestly acted in their individual and not in their official character. It

may be conceded that "every creditor of the Schuylkill Navigation Company had a right to look to the board of directors of that company for guidance," but it by no means follows that the "plan was dependent upon its acceptance by the board of managers." The plan was dependent upon its acceptance by each individual stockholder or bondholder. An attempt on the part of the board to accept the plan on behalf of the corporation would have been ultra vires : 1 Morawetz on Corp., §§ 512–14; Kean v. Johnson, 1 Stock. 413; Martin v. Cont. Pass. Ry. Co., 14 Phila. 10.

3. No case can be found sustaining the position that a director can be estopped from asserting his individual rights as a bondholder and deprived of his property by reason of the action of a board of which he is a member, unless he has concurred in such action, or the facts are such as to render the subsequent assertion of his individual rights a fraud : Ridgefield v. N. Y. R. Co., 46 Conn. 375, and Greencastle v. Black, 5 Ind. 559, are express authorities against it. To constitute an estoppel it must appear affirmatively that "the actor, having no means of information, was by the conduct of the other induced to do what he otherwise would not have done : " BELL, J., in Commonwealth v. Moltz, 10 Pa. 532 ; Hill v. Epley, 31 Pa. 331.

OPINION, MR. JUSTICE STERRETT :

As was well said by the learned judge of the Common Pleas in disposing of the plausible but unsound defence that was interposed in this case : " The plaintiff cannot be deprived of his rights by the action of a board of which he is a member. It would be detrimental frequently to the success of such a plan as this, if not impracticable, that a dissenting member of the board should, in order to establish his individual rights as a non-assenting holder, be expected to publish the fact of his dissent to the general public." Such a course would doubtless have been prejudicial to the success of plaintiff in error's scheme, and distasteful to its promoters.

The proposition submitted by the reconstruction trustees of the plaintiff in error was addressed to the stockholders and bondholders of the Schuylkill Navigation Company individually, and not to the corporation itself. The acceptance or re-

jection of the proposition depended on the personal action of each share- or bondholder. The board of managers had no power in the premises. The proposition was binding on the shareholders and bondholders only so far as it was accepted by them in their individual capacity, and their respective holdings· deposited for exchange on the terms proposed; and ·not even then, unless, in the judgment of the reconstruction trustees, sufficient stock and securities were received to justify them in carrying out the scheme.

Plaintiff below neither did nor omitted to do anything that can by any possibility have the effect of estopping him from asserting his claim under either of the securities which he neither deposited nor agreed to deposit for exchange and settlement, according to the terms of the proposition above referred to.

The court below was clearly right in entering judgment for want of a sufficient affidavit of defence.

Judgment affirmed.