## APPEAL OF MARGARET J. RUNNER, ADMX.
## [ESTATE OF ROBERT KILLOUGH.]

### FROM THE DECREE OF THE ORPHANS' COURT OF LANCASTER COUNTY.

121 649
182 606
121    649
210   ²343

Argued May 16, 1888—Decided October 1, 1888.

1. Credits indorsed upon a bond, are not evidence of actual payment of the credits sufficient to repel the presumption of payment of the bond, without proof that they were made within twenty years and whilst it was against the interest of the obligee to make them: See Gregory v. Commonwealth, Porter v. Nelson, and Breneman's Appeal, preceding.
2. In the present case, in the distribution of a decedent's estate, declarations by the decedent shortly before his death held to exhibit an unequivocal acknowledgment of the existence of a specialty indebtedness, sufficient to repel the presumption of payment after the lapse of twenty years.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No 300 January Term 1888, Sup. Ct.

On June 20, 1887, the account of Jesse Wood and L. O. Wright, administrators of Robert Killough, deceased, who had died on January 5, 1886, was confirmed, and *Mr. Charles Dennues* was appointed auditor to report distribution of the balance shown.

At a hearing before the auditor, in August, 1887, Margaret J. Runner, administratrix of Mary E. Killough, deceased, presented for allowance and payment two notes under seal, made by Robert Killough, to the order of Mary E. Killough, both dated December 10, 1864. One of these notes was for $800, payable one year after date, with interest, with a credit of $10, October 6, 1875, indorsed; the other was for $275, payable one year after date, with interest, having credits indorsed, as follows: $5, December 2, 1867; $70, October . . . . .; $25, March 3, 1879. Objection to the allowance of the notes was made, on the ground that they were presumed to have been paid, from lapse of time.

It was shown and the auditor found as facts, that Mary E. Killough, deceased, was a sister of Robert Killough whose estate was for distribution, and she had left at her death, intestate on April 5, 1884, a sister, Eleanor Tomlinson, and the brother, Robert Killough, as her next of kin; that the indorsements of credits on the notes were made by the obligee; that the only demand made for the payment of the notes, was the one made before the auditor, and that the estate of Robert Killough had all along been solvent.

Several witnesses were called by the claimants to prove conversations had with Robert Killough a short time before his death, in which, as it was claimed, he acknowledged the then existence of the indebtedness; their testimony is fully shown in the Opinion of the Court.

The auditor ruled, first, that the indorsements upon the notes were not sufficient to repel the presumption of payment, in the absence of affirmative evidence that they were made when it was against the interest of the obligee to make them: Lash v. Von Neida, 109 Pa. 207; and, second, that after the lapse of twenty years, the burden of proof to repel the presumption of payment devolves upon the plaintiff, and whether the evidence introduced for the purpose is sufficient or not is a question of law: Reed v. Reed, 46 Pa. 242; Beale v. Kirk, 84 Pa. 416; and, third, that the admissions made in the conversations of the decedent proven, were insufficient to repel the presumption of payment. The claim upon the notes was therefore disallowed.

The report of the auditor was filed on December 10, 1887, when the claimant filed exceptions to the rulings under which the claim was rejected. These exceptions were argued before PATTERSON, J., on December 22, 1887, who on January 14, 1888, filed an opinion ruling with respect to the testimony of the witnesses referred to: " This testimony, without more, does not, in the opinion of the court, show that the notes were not paid. We think there should be something more direct and positive to overcome the presumption of payment. It is not even shown in support of those two witnesses' testimony that the decedent did not ' come up shortly and fix up those notes,' or that he did not ' come up in a week or ten days for that purpose.' We think the auditor did not err, and we dismiss

all the exceptions and confirm absolutely the report of the auditor.

Thereupon, the claimant took this appeal and assigned the order confirming the report as error.

*Mr. W. U. Hensel* (with him *Mr. J. Hay Brown*), for the appellant:

Whether the presumption of payment, arising from lapse of time, is rebutted by a given state of facts, is a question of law for the court: Beale v. Kirk, 84 Pa. 415. What could be a more unmistakable and unqualified acknowledgment of a debt than is found in the testimony of the witnesses? Moreover, there is nothing unusual in the lax enforcement of payment of principal and interest between brother and sister, and all presumptions are in accord with what is usual, not against it: Reed v. Reed, 46 Pa. 239. It is not reasonable to presume a debt paid, which the debtor says is not paid, and the slightest evidence of acknowledgment by the creditor removes the presumption which only lapse of time has created: Stout v. Levan, 3 Pa. 236; Eby v. Eby, 5 Pa. 438; Henderson v. Lewis, 9 S. & R. 384; Foulk v. Brown, 2 W. 215.

*Mr Hugh R. Fulton*, for the appellees:

1. The death of the debtor does not stop the running of the statute of limitations: Campbell v. Fleming, 63 Pa. 242; McCandless's Est., 61 Pa. 9; Yorks' App., 110 Pa. 69. From the maturity of the notes to the presentation of the claim before the auditor, a period of twenty-one years and eight months intervened. Leaving out the testimony of Henry Runner, there was not a scintilla of affirmative evidence to repel the presumption of payment. Henry Runner was an interested witness, and his testimony was self-contradictory; but, considering it in the fairest light, his testimony was merely that Robert Killough would be up shortly and fix up the notes; no proof followed that he did not do so.

2. A debt due for twenty years, in the absence of explanatory evidence is presumed to have been paid. The presumption prima facie obliterates the debt, and the burden is on the debtor, not to establish a new contract, but to show that the debt has not been paid: Reed v. Reed, 46 Pa. 239; Bentley's

App., 99 Pa. 500; Foulk v. Brown, 2 W. 215; Ankeny v. Penrose, 18 Pa. 190; Biddle v. Girard N. Bank, 109 Pa. 349; Hayes' App., 113 Pa. 380; Korn v. Browne, 64 Pa. 57. After less than twenty years, with other circumstances, a presumption of payment arises: Henderson v. Lewis, 9 S. & R. 379; Briggs's App., 93 Pa. 485; Hughes v. Hughes, 54 Pa. 240; Beale v. Kirk, 84 Pa. 417; Peters's App., 106 Pa. 340; Stout v. Levan, 3 Pa. 236. The indorsements are insufficient to repel the presumption of payment: Lash v. Von Neida, 109 Pa. 207 : they were no part of the bond.

OPINION, MR. JUSTICE CLARK :

The question presented in this appeal arises upon the distribution of the estate of Robert Killough, deceased, in the Orphans' Court of Lancaster county. The claim which gives rise to the contention is made by Margaret J. Runner, administratrix of the estate of Mary Eliza Killough, deceased, on an obligation under seal, dated 10 December, 1864, payable in one year from date, with interest; one calling for $800, upon which a credit of $10 is entered 6 October, 1875; the other for $267, upon which credits are entered as follows : 2 December, 1865, $5; October, $70; 3 March, 1879, $25. The execution of the notes is admitted, and their validity at the time of their execution is not denied. No claim was made upon them, however, until after the debtor's death, and it is contended on the part of the executrix of the last will and testament of Robert Killough, deceased, that as they have been unclaimed and without recognition for twenty years and upwards before their presentation to the auditor, the law will presume that they are paid.

The obligations which constitute the claim in this case were dated as we have said, 10 December, 1864; Mary Eliza Killough died 5 January, 1886, and the obligations were laid before the auditor some time in August, 1887. From the time of the maturity of the obligations, therefore, eighteen years, three months, and twenty-five days had intervened at the death of Mary Eliza Killough; twenty years and twenty-five days at the death of Robert Killough, and twenty-one years and eight months when they were presented for payment before the auditor. Under these circumstances the presumption of payment would undoubtedly arise, unless there is sufficient

evidence to explain the delay, or to show that notwithstanding the presumption the debt is actually unpaid. There is no evidence showing when the several credits referred to, or any of them, were entered, and it is a well-established principle that credits indorsed on a bond are not evidence of actual payment, to rebut the presumption, until proven or shown to have been made within twenty years, and whilst it was contrary to the interest of the obligee to make them: Lash v. Von Neida, 109 Pa. 207. It is not pretended that Robert Killough was insolvent, or that the money might not, at any time after the maturity of the bond, have been made out of his estate; the only matter suggested in explanation of the delay is the fact, that the parties to the obligation were brother and sister, and as the latter was in no need of her money she was indulgent in its collection. The appellant relies, however, upon certain admissions of Robert Killough, made within twenty years, which she contends are sufficient to rebut the presumption of payment. The auditor, as well as the court below, was of opinion that the evidence of these alleged admissions was insufficient; that it was not direct or positive, and the claim was not allowed in the distribution.

Mary Eliza Killough at her death left to survive her a brother, the said Robert Killough, and a sister, Eleanor Tomlinson. Robert Killough was therefore entitled to one half of the estate of Mary Eliza and Eleanor Tomlinson to the other half. Margaret J. Runner, wife of Henry Runner, the administratrix of the estate of Mary Eliza Killough, deceased, is a daughter of Eleanor Tomlinson, and Ebenezer Tomlinson is her son.

Ebenezer Tomlinson testifies as follows: " Two weeks before Robert Killough died, I was there to see him, and he told me to tell my mother, Eleanor Tomlinson, to come down, that he wanted to see her on this business of theirs; that he was not able to go up to her. He did not say what business. She was sick at the time and was not able to go there." Henry Runner testifies: " A short time before Robert Killough's death he said to me that he would be up shortly, in a week or ten days, and fix up these two notes. He spoke of his sister's notes, but mentioned no amount. . . . . . Robert Killough and Eleanor Tomlinson came to my house about a month before Robert

Killough's death. It was before Thanksgiving day. He asked me for these notes and said he would like to fix them up. He did not get them, my wife was not at home that day. Robert Killough told Mrs. Tomlinson there, that he would pay her one half the money on these notes, that he would be up in a week or ten days for that purpose. I heard him say this to her. . . . . . He said he would pay over her share on the two notes to Eleanor Tomlinson. He said this to Eleanor Tomlinson in my presence; the notes were not shown to him at that time; the notes were at my place. They were not fixed on that day on account of sickness. He did not say how he was going to fix them, no more than I have told you. . . . . . He finished the conversation as he got into the carriage to go away. The carriage was out in the road close to the gate. The conversation took place in the house, in the first place, in the kitchen. I was there during the conversation in the kitchen; no person had a piece of paper or pencil to count how much money was due. My wife was not there; she was not at home. The notes were at the house at that time; she kept them up-stairs in a little box, a fancy box she kept papers in; it was not locked either. My mother-in-law was not living with us at that time. She had a home of her own at Mechanics' Grove. Mrs. Tomlinson came to my house on that day with Robert Killough. They were at my place about an hour. It was because my wife was away that they could not get these notes to make the calculation; they had not these notes before them at that time."

If this testimony is believed, and it is not contradicted or in any way discredited, it exhibits a clear, distinct and unequivocal recognition of the debt evidenced by the notes. It is not the case of a casual conversation with a stranger. The purpose of Robert Killough's visit to the house of Mrs. Runner was to fix these notes; his purpose he said was to pay to her the one half; he took Mrs. Tomlinson with him in order that this adjustment might be made, but owing to the absence from home of Mrs. Runner, who had the notes in her custody, the settlement was not effected. "He asked for the notes," says Runner, "he said he would like to fix them up; he did not get them; my wife was not at home that day; Robert Killough told Mrs. Tomlinson, then, that he would pay her one half of the

money of these notes; that he would be up in a week or ten days for that purpose. I heard him say this to her." This recognition of the debt is express and direct, positive and unconditional; if true, it was certainly sufficient to rebut the presumption, and its truth is not seriously questioned. We are of opinion that this claim should have been allowed.

> The decree of the Orphans' Court is therefore reversed, and the record remitted in order that distribution may be made in accordance with this opinion, and it is ordered that the appellees pay the costs of this appeal.