# Ike's Estate.

*Executors and administrators—Sale of real estate for payment of debts— Issue to determine validity of notes held by administrator.*

Where an administrator in petitioning the court for an order to sell real estate for the payment of debts includes in the schedule of debts certain notes of the decedent to himself, and the widow of the decedent petitions the court for an issue to determine the validity of such notes, the issue asked for is not of right, but depends upon the discretion of the court, and the Supreme Court will not review the exercise of such discretion where no abuse of it has been shown. In such a case if the court refuses the issue, the widow may still, when the administration account is filed and the fund is brought before the court for distribution contest the validity of the notes, and even then the issue before denied, may be awarded by the court.

Argued April 25, 1901. Appeal, No. 139, Jan. T., 1901, by Emma G. Ike, from decree of O. C. Blair Co., No. 314, 1900, refusing an issue in the estate of E. M. Ike, deceased. Before McCollum, C. J., Mitchell, Fell, Brown and Potter, JJ. Affirmed.

Exceptions to examiner's report.

From the record it appeared that on May 4, 1898, Jerry Ike, the administrator and father of E. M. Ike, presented his petition to the orphans' court to sell decedent's real estate for the payment of debts. Included in the schedule of debts were $9,000 of notes held by Jerry Ike against the decedent. Emma Ike, widow of deceased, petitioned the court for an issue to determine the validity of the notes alleging that they had been given in pursuance of the conspiracy to defraud the petitioner's rights. The matter was referred to M. M. Morrow, Esq., as examiner to take testimony. The examiner filed a report in which it appeared that he had not permitted the widow to offer certain testimony as to fraud. The matter was referred back to him, and upon his second report, Bell, P. J., filed an opinion which was in part as follows:

[But at such rehearing, Mrs. Ike, the widow, apparently shifted the ground of her contention. She offered no evidence tending to show a fraudulent scheme to deprive her of her rights as widow, but she did offer some testimony, tending to show, it is claimed, that the notes in controversy, payable to Jerry Ike, were signed by Dr. E. M. Ike with an intent to defraud creditors at a time when he was prosecuted for an alleged abortion. The offer of evidence—or that part of it wherein its purpose is disclosed—is as follows:

"The evidence is offered for the purpose of showing that after said informations (for abortion) were made and up to the time the bill was ignored that Dr. E. M. Ike was in sore distress as to the outcome of these prosecutions, and feared that he would be ruined financially and imprisoned, and counsel for Mrs. E. M. Ike propose to argue from this that inasmuch as E. M. Ike has not shown any consideration for these notes that these notes were drawn by Dr. E. M. Ike, and left among his papers, with possibly the intention of delivering the same to his father, and that the necessity for the delivery having been done away with by the ignoring of the bills, his father, when he took out letters of administration, found these notes among the papers of the decedent in his capacity as administrator."

The examiner rejected the offer. But if the testimony had been admitted, how would the case of the widow now stand? We would, in the first place, have some evidence tending to show that Dr. E. M. Ike prepared and signed the notes in question as part of a scheme to cheat and defraud creditors. Just who the creditors or prospective creditors were is not disclosed by the offer, but unquestionably it was part of a scheme to cheat some one, and not to cheat his wife.] [3]

In the second place, we have the contention of counsel for the widow that Jerry Ike, being administrator, is bound to show affirmatively that he holds the obligations under a hostile title and did not find the notes in question among the papers of the decedent after death of said decedent.

Let us consider said second proposition first. Said contention of counsel is founded, principally, if not wholly, on McGeary's Appeal, 5 Central Reporter, 855, McMahon's Estate, 132 Pa. 179, and Hoffer's Estate, 156 Pa. 474. But said three cases must be read in the light thrown upon them by the com-

ments of the present chief justice in Kuhlman's Estate, 178 Pa. 48. Mr. Justice McCollum there very clearly shows that said three cases, relied on by counsel for the widow, were decided on their peculiar circumstances and that there is no unbending legal rule requiring an administrator to show a hostile claim to a note he presents, payable to himself, against the estate of his decedent; that it is unnecessary for such administrator under ordinary circumstances to show affirmatively that he did not find the note in question among the effects of the decedent.

Mr. Justice McCollum says (178 Pa. 49): "It is not unusual for a party who has paid his note to retain it without canceling his signature to it, or making some entry thereon destructive of his liability created by it."

And in the present case not only is there an absence of any "entry" "destructive" of "liability," but the book of Dr. E. M. Ike contains entries showing the notes in question to be due, and unpaid.

Said entries, found on page 1, of the ledger of Dr. E. M. Ike, are as follows, in the handwriting of Dr. E. M. Ike:

JERRY IKE.

| | | |
|---|---|---:|
| Note Dec. 24th, 1894, given . . . . | $ | 850.00 |
| " Mar. 14th, 1895, " . . . | | 1,000.00 |
| " Mar. 14th, 1895, " . . . . | | 700.00 |

Interest paid and the above cancelled.

| | | |
|---|---|---:|
| Note Mar. 14th, 1896, 1 year . . . | $ | 700.00 |
| " Mar. 14th, 1896, 1 year . . . | | 1,000.00 |
| " April 9th, 1896, 1 year . . . | | 1,300.00 |
| " Oct. 15th, 1896, 1 year . . . | | 500.00 |
| " May 31st, 1897, 1 year . . . | | 502.00 |

It will be observed that Dr. Ike in his ledger did make an entry "destructive of liability" as to the first three notes. The fact that he failed to make such entry as to the other notes, the notes now in question, is at least persuasive that at his death, which occurred July 29, 1897, he was liable to pay the notes in question; that they were unpaid.

Such failure to make such entry "destructive of liability," coupled with the further fact that two of the notes were not

due at the time of his death and the other notes were but from three to four months past due, would seem to be sufficient to rebut the idea that Jerry Ike found these notes, which had been paid to him and returned to the maker, among the effects of Dr. E. M. Ike.

[But does the said legal doctrine contended for by counsel for the widow, founded upon McGeary's Appeal and McMahon's Estate, apply to a case like the present, when it is coupled with the prior proposition of said counsel that the notes were signed as part of a scheme to defraud creditors? Said legal doctrine is predicated on the idea that a debtor might have honestly repaid to his creditor a bona fide note, which note was thereupon returned to the debtor; the debtor dies and the creditor, taking advantage of access to the debtor's papers as his executor, or administrator, seeks to collect said note a second time. But will the law stretch out its arm to invoke this doctrine in case of the estate of one who by his wrongful act in striving to cheat some one, and for a fraudulent purpose, has left the fraudulent notes among his papers?] [4]

[This thought brings us down to the consideration of the first proposition advanced on behalf of the widow, namely, that the notes were voluntarily made, no consideration passed between the parties, but the purpose of their making was to defraud creditors.

Assume this fact to be proven, can Mrs. Ike, widow of Dr. E. M. Ike, who fraudulently wrote the notes, avail herself of such a defense? True, it may be, as stated by Mr. Justice STERRETT, in Hummel's Estate, 161 Pa. 215, that, " a voluntary bond, payable at the maker's death, given for the purpose of defrauding the maker's wife of her rights in his estate, cannot be sustained where the donee is a party to the fraud; " but this is not such a case; here the allegation is that the notes were drawn, not to defraud the wife, but creditors, third parties.

The books are full of rulings to the effect that neither the perpetrator of the fraud, or any one claiming through or under him, can defend on the ground of want of consideration; the law leaves the defrauder (to coin a word) and his privies, where he has put himself. The only exception seems to be that in some cases the administrator, as the representative of creditors, and in order to obtain assets herewith to pay creditors, may be

heard to attack a bond of his decedent, on the ground that it was voluntary and in fraud of such creditors. The cases under this exception are collated in 8 Pepper and Lewis's Digest of Decisions, columns 12595 and 12596. But in the present case, any right which Mrs. Ike, the widow, asserts, came to her through her husband. He would not be heard to allege that the notes in question were drawn up to cheat creditors. Neither do we think that she, claiming under him, should be allowed to make a similar allegation.] [5]

The present question seems never to have been ruled upon in the case of a widow, but an analogous principle in the case of a child was passed upon in Reichart v. Castator, 5 Binney, 109, wherein it is ruled that " a deed made to defeat and defraud creditors is void as against creditors, but not so against the grantor himself, or his children."

The trial judge charged the jury, " that the plaintiffs, who were Henry Reichart's daughters, did not stand in the same situation with their father in relation to this deed; that as it would be void against creditors, if there were creditors whom he intended to defraud, so it ought to be void against his female children. Next to the claim of creditors, the claim of nature ought to be considered."

But the Supreme Court reversed the judgment, YEATES, J., saying :

" The question therefore is reduced to one single point, on this part of the case : do the daughters of Henry Reichart stand in a different situation from their father as to this deed? The deed, however fraudulent as to creditors, as to him is valid and binding ; and neither courts of law nor equity would relieve him against his own iniquity, voluntarily practiced. His daughters claim under and through him ; and however innocent and unoffending they must be considered of the trick intended by their father, cannot, in a legal sense, be deemed his creditors. His crime will be visited on them and the law points out to them no mode of redress, which was not open to their father. Hence, I conceive, that the charge of the court was erroneous in this, that the plaintiffs below stood in a different situation from their father as to the deed under consideration."

This reasoning of Mr. Justice YEATES is as applicable to the case of a widow as it is to the case of a female child. The

same legal rule which bars the right of a child to allege, as against a conveyance, that the deceased father made it in fraud of creditors, would likewise bar the right of the widow to make a similar defense.

### DECREE.

[Now, on March 4, 1901, the exceptions to the report of the examiner are overruled and said report is confirmed absolutely, and the application of the widow for an issue is refused.] [6]

*Errors assigned* were (2) the action of the court of common pleas in refusing to permit the widow to intervene and defend in certain suits brought on the notes in controversy; (3, 4, 5, 6) portions of opinion and decree as above, quoting them.

*Thomas H. Greevy*, for appellant.—The best evidence that these notes were given, if given at all, to cheat the wife and not the creditors, is the fact that they were never entered of record in the decedent's lifetime, and that they never turned up until after the death of the latter, and then as unrecorded paper: Hummel's Estate, 161 Pa. 215.

The administrator is doubly bound to show that he held the notes by another and hostile title: Childs's Est., 26 N. Y. Supp. 721; Ex parte Hanks, Cheves (So. C. Eq.), 203; McCann's App., 9 Atl. Repr. 48; Cann v. Cann, 40 W. Va. 138; Wilder v. Franklin, 10 La. Ann. 279; McMahon's Est., 132 Pa. 175; McGeary's App., 5 Cent. Repr. 855; Hoffer's Est., 156 Pa. 473.

Even if not administrator, as an individual creditor, the proof falls short of the requirements of the law: Mueller's Est., 159 Pa. 590; Carpenter v. Hays, 153 Pa. 432; Hess's Est., 9 Pa. Dist. Rep. 19; Seybert's Est., 5 Pa. C. C. Rep. 35.

As father, claimant and administrator of decedent, he was trebly bound to show the execution, delivery, consideration and perfect fairness of the transaction: Darlington's Est., 147 Pa. 630; Miskey's App., 107 Pa. 611.

*Charles Geesey* and *H. H. Waite*, for appellee, were not heard.

OPINION BY MR. JUSTICE BROWN, July 17, 1901:

This is an appeal from a decree made by the orphans' court

of Blair county, refusing the appellant's application for an issue to determine the validity of certain obligations held by Jerry Ike, the appellee, against the estate of her husband, E. M. Ike, deceased; but we have the rather remarkable assignment before us by which we are asked to review and correct alleged error committed by the court of common pleas in refusing to permit the appellant to intervene and defend in six suits, brought by the appellee to recover judgments on the said notes held by him against the estate of the decedent. This alleged error of the learned president judge of the common pleas is brought to our attention in appellant's history of the case, and is discussed by counsel for appellee as well as for appellant in their printed argument; but we hardly think we need say anything more about the second assignment, which must have slipped into this record.

To his petition to the orphans' court for an order to sell the real estate of the decedent for the payment of debts, the administrator, Jerry Ike, appended the usual schedule of liabilities, in which was included the sum of $9,000 due to himself on judgment notes. The real estate was sold, exceptions were filed by the appellee to the confirmation of the sale, and she subsequently presented her petition to the court below, asking, for reasons therein set forth, that an issue be awarded to determine the validity of the several notes of her husband, making up the $9,000 item of liability in the schedule of debts appended to the application for the order of sale. An answer to this petition was filed by the appellant, and, after hearing before an examiner, the court, in a well-considered opinion, refused the issue. No useful purpose can now be served by reviewing, simply to sanction them, the reasons given by the learned judge of the court below in denying appellant's petition. The issue asked for was not of right, but depended upon the discretion of the court, under the facts as developed: Kates's Appeal, 148 Pa. 471. There was not only no abuse of this discretion, but in our judgment, upon a review of the whole record, a proper exercise of it.

If these notes of the decedent, held by the administrator, his father, ought not to be paid, the appellee can still, at the proper time, when the administration account is filed and the fund in the hands of the administrator is brought before

the court for distribution, contest their right to participate in it. The decree appealed from will not preclude her. It was not made in connection with the distribution of the decedent's estate, but rather in a proceeding that grew out of the application of the administrator for an order to sell the real estate, that funds might be realized for the payment of creditors. Hereafter, when these notes, now objected to by the appellant, are formally presented to an auditor distributing the estate of the decedent, objections to them can be made and must be heard; and, even then, the issue now denied can be awarded by the court, in the exercise of its discretion, if, repeating the words of the learned judge below when he first refused it, " It be made to appear that there is a necessity for such trial."

The first, third, fourth, fifth and sixth specifications of error are overruled, the appeal is dismissed and the decree affirmed at the cost of the appellant.