## Sheafer et al., Appellants, *v.* Woodside et al.

*Mortgages — Presumption of payment — Evidence — Rebutting presumption—Case for jury.*

1. The rule that after the lapse of twenty years debts by specialty are presumed to be paid is a rule of convenience and policy resulting from a necessary regard for the peace and security of society, and also for the debtor, who should not be called upon to defend stale claims at a time when witnesses are dead and papers lost or destroyed. This presumption does not bar the debt, however. Unlike the statute of limitations, it is merely a rule of evidence affecting the burden of proof, and no new promise is required as the basis of an action. Within twenty years the burden of proving payment is on the debtor, after that time it shifts to the creditor. To rebut the presumption any competent evidence tending to show the debt is not in fact paid will be received. Although it need not be of the same quality as required to remove the bar of the statute of limitations, it should, however, be clear and convincing, es-

pecially where suit is not brought until after the death of the debtor.

2. Upon a scire facias issued in August, 1915, upon a mortgage made in 1876, where the administrator of the estate of the last survivor of the mortgagors pleaded payment, and at the trial relied upon the presumption of payment arising by reason of lapse of more than twenty years but there was proof of a long continued inability of the debtors to pay, that the surviving debtor recognized the existence of the indebtedness in 1914, stating in effect her inability to pay, and requesting the witness to see the creditor and ask indulgence; that the witness complied with the wishes of the mortgagor and, as a result of the interview, the debtor received a letter informing her that no steps to enforce payment of the indebtedness would be taken during her lifetime, the evidence was sufficient to overcome the presumption of payment, and the case was for the jury, and the jury having found a verdict for plaintiff, it was error to enter judgment for defendant n. o. v.

Argued Feb. 12, 1917. Appeal, No. 268, Jan. T., 1916, by plaintiffs, from judgment of C. P. Schuylkill Co., Sept. T., 1915, No. 355, non obstante veredicto for defendants in case of A. W. Sheafer and Henry Sheafer, Surviving Executors of Estate of Peter W. Sheafer, deceased, v. A. B. Woodside, Virginia Woodside, Geraldine Woodside, Fannie Woodside, Mortgagors; Estate of Geraldine Woodside; G. W. F. Woodside, Administrator, real owner. Before BROWN, C. J., MESTREZAT, POTTER, FRAZER and WALLING, JJ. Reversed.

Scire facias sur mortgage. Before KOCH, P. J.

The opinion of the Supreme Court states the case.

Verdict for plaintiffs for $8,728.87. The court subsequently entered judgment for defendants non obstante veredicto. Plaintiffs appealed.

*Error assigned* was in entering judgment for defendants n. o. v.

*John G. Johnson,* with him *Woodbury & Woodbury,* for appellants.—The evidence was sufficient to overcome

the presumption of payment from lapse of time and the question was properly submitted to the jury by the court: Eby v. Eby's Assignee, 5 Pa. 435; Reed v. Reed, 46 Pa. 239; Porter v. Nelson, 121 Pa. 628; Hagan's Est., 50 Pitts. L. J. 49; Troxell v. Troxell, 19 York L. R. 20; White v. White, 200 Pa. 565; O'Hara v. Corr, 210 Pa. 341; Wilson v. Eckman, 55 Pa. Superior Ct. 403.

*John Robert Jones,* for appellees.—Presumption of payment governs the case: Peter's App., 106 Pa. 340; Gregory v. Commonwealth, 121 Pa. 611; Fidelity Title & Trust Co. v. Chapman, 226 Pa. 312.

OPINION BY MR. JUSTICE FRAZER, March 19, 1917:

In 1876, Mrs. A. B. Woodside and her three daughters, Virginia, Geraldine and Fannie, executed a bond and mortgage to Peter W. Sheafer, to secure the payment of $2,650 in two years, covering property owned by them in the Borough of Pottsville. The mortgage was duly recorded in the office for recording deeds in Schuylkill County on June 24, 1876, in mortgage book 1 A H, page 395. Peter W. Sheafer, the mortgagee, died in 1891, leaving a will in which Arthur W. Sheafer and Henry W. Sheafer were named as executors. At the time of his death the bond and mortgage above referred to were found among his papers; the bond having endorsed thereon, in the writing of Peter W. Sheafer, a payment of $56, under date of December 22, 1877. There is no evidence that demand for payment of the indebtedness secured by the mortgage was made until after the death of the last survivor of the mortgagors, when the executors of the estate of Peter W. Sheafer, on August 25, 1915, issued a scire facias, to which the administrator of the estate of Geraldine Woodside, the last survivor, pleaded payment, and, in support of this plea, at the trial relied upon the presumption of payment by reason of lapse of time, and presented a point for binding instructions for defendant. The trial judge reserved

the point, and submitted to the jury the facts presented by plaintiff to rebut presumption of payment. A verdict was rendered in plaintiff's favor for the amount of the mortgage with interest aggregating, after deducting the payment endorsed on the bond, the sum of $8,727.87. Judgment was subsequently entered in favor of defendant, non obstante veredicto, whereupon plaintiff appealed.

A period of thirty-six years elapsed from the maturity of the mortgage until the beginning of foreclosure proceedings. Dr. O'Hara, a practicing physician in Pottsville for twenty years, called by plaintiff, who had been a family physician of the Woodsides, although only Fannie and Geraldine were living when he first attended them, testified that in 1914, shortly after the death of Fannie, Geraldine, the survivor, spoke to him in reference to the mortgage due the Sheafer Estate, and, while the witness was unable to recall the exact language of the conversation, he stated—"she told me she did not know what would happen to them or what would happen to her, or would become of her, I do not exactly know the verbatim statement, but she wept, and so forth, and she said that the Sheafers held a mortgage or that she was in a great debt to them, in other words." He testified further she told him—"she did not know what would become of them now; she did not know whether Sheafers will push the mortgage or not, and she was in a very nervous state, not knowing what would become of her." He also testified the family had been in straitened financial circumstances, and had received assistance from neighbors, and further that Geraldine requested him to speak to the Sheafers about the mortgage, which he subsequently did by informing Lesley Sheafer that— "one of those Miss Woodsides is worried to death about what will become of her now since the other sister is gone; she did not know what will become of the place now." Lesley Sheafer, called as witness by plaintiff, corroborated Dr. O'Hara's testimony as to the conversation

in relation to the Woodside mortgage, and testified to bringing the subject to the attention of A. W. Sheafer, one of the executors of the Sheafer Estate, who, following that conversation, on December 22, 1914, wrote Miss Woodside, as follows: "Dear Miss Woodside: Information has come to us through Dr. O'Hara that you are worried in regard to the mortgage which we hold on your property at 219 South Center street. We therefore, take this opportunity of assuring you that we have no intention of in any way endeavoring to collect this mortgage or any interest thereon during your lifetime or so long as it remains your property. We trust, therefore, that you will not allow this matter to trouble you in the least. Extending to you our sympathy in your recent bereavement, we are, yours very truly, A. W. Sheafer, for the executors of estate of P. W. Sheafer, deceased." A copy of this letter was also sent to Dr. O'Hara, who subsequently saw Miss Woodside, and was informed by her of having received the letter from Mr. Sheafer, and that it gave her much relief.

The above is the evidence relied upon by plaintiff to rebut the presumption of payment arising from lapse of time. The rule that after the lapse of twenty years debts of every kind are presumed to be paid is a rule of convenience and policy, resulting from a necessary regard for the peace and security of society, and also for the debtor, who should not be called upon to defend stale claims at a time when witnesses are dead, and papers lost or destroyed: Foulk v. Brown, 2 Watts 209; Eby v. Eby's Assignee, 5 Pa. 435. This presumption does not bar the debt, however. Unlike the statute of limitations, it is merely a rule of evidence affecting the burden of proof, but no new promise is required as the basis of an action: Eby v. Eby's Assignee, supra. Within twenty years the burden of proving payment is on the debtor, after that time it shifts to the creditor: Reed v. Reed, 46 Pa. 239. To rebut the presumption any competent evidence tending to show the

debt is not in fact paid will be received. Although it need not be of the same quality as required to remove the bar of the statute of limitations (Gregory v. Commonwealth, 121 Pa. 611; Devereux's Est., 184 Pa. 429), it should, however, be clear and convincing, especially where suit is not brought until after the death of the debtor, as in the present case: Fidelity Title & Trust Co. v. Chapman, 226 Pa. 312. In Foulk v. Brown, 2 Watts 209, the rule was stated as follows: "Within the twenty years the onus of proving payment lies on the defendant; after that time it devolves on the plaintiff to show the contrary by such facts and circumstances as will satisfy the minds of the jury that there were other reasons for the delay of the prosecution of the claim than the alleged payment. And if these facts are sufficient satisfactorily to account for the delay, then the presumption of payment, not being necessary to account for it, does not arise. Slighter circumstances are sufficient to repel the presumption than are required to take the case out of the statute of limitations, the latter being a positive enactment of the legislature, the former merely an inference on which legal belief is founded." In Reed v. Reed, 46 Pa. 239, 242, it was said: "The presumption is rebutted, or, to speak more accurately, does not arise where there is affirmative proof beyond that furnished by the specialty itself that the debt has not been paid, or where there are circumstances that sufficiently account for the delay of the creditor."

Whether the proof is ample to rebut the presumption of payment must necessarily depend on the particular circumstances of each case, and it is primarily for the court to decide whether the facts, if true, are adequate for the purpose for which offered, and whether the facts relied upon are true is a question for the jury: Fidelity Title & Trust Co. v. Chapman, supra. In Gregory v. Commonwealth (supra), the plaintiff, to rebut the presumption of payment, relied upon acknowledgments by the debtor, made to third persons at various times, to the

effect that there was something between him and plaintiff which "had never been thoroughly settled." It appeared, however, that the reference might have been to the settlement of certain other matters concerning an estate in which the debtor was interested, and it was held the testimony was too uncertain and equivocal in meaning to rebut the presumption of payment, the court saying: "Any competent evidence which tends to show that the debt is in fact unpaid is admissible for that purpose. The evidence may consist of the defendant's admission made to the creditor himself, Eby v. Eby's Assignee, 5 Pa. 435; or to his agent or even to a stranger: Morrison v. Funk, 23 Pa. 421; Reed v. Reed, 46 Pa. 239; but an admission will not be as readily implied from language casually addressed to a stranger, as when addressed to the creditor in reply to demand for a debt: Bently's App., 99 Pa. 500. It is of no consequence that the admission of nonpayment is accompanied by refusal to pay; the action is not founded on a promise, but on the original indebtedness; the question, as against the presumption, is whether or not the debt is in fact unpaid." In Runner's App., 121 Pa. 649, statements made by the debtor of an intention to pay were held sufficient for the purpose of rebutting the presumption of payment. In Smith v. Schoenberger, 176 Pa. 95, declarations by defendant to the effect that the debt was not paid, made in the presence of plaintiff, was held enough to take the case to the jury. In White v. White, 200 Pa. 565, an admission by the debtor, in the presence of a witness, that he had no money to pay the interest on the debt in question was held ample to overcome the presumption of payment. In O'Hara v. Corr, 210 Pa. 341, it was held that the case was for the jury where witnesses for the plaintiff testified that the deceased mortgagor stated he had purchased the mortgaged premises but could not pay the mortgage, and would have to let the property go. It has also been held that proof of the inability of the debtor to pay during the whole period of the existence of the

debt is such circumstance as would explain the delay, and prevent the presumption of payment arising. For instance, in Taylor v. Megargee, 2 Pa. 225, 226, it was said that mere poverty, or insolvency alone, was insufficient to overthrow the presumption of payment, arising from lapse of time, "unless it be such as to have created an abiding inability to pay during all the time"; and in Devereux's Est., supra, it was said: "The ability of the obligor to pay and the pressing need of the obligee for money have been recognized as circumstances which aid the presumption of payment: Hughes v. Hughes, 54 Pa. 240. On the other hand it was held in Tilghman v. Fisher, 9 Watts 441, that one of the intervening circumstances which may rebut the presumption is the inability of the debtor to pay within twenty years, and proof of a continued inability to pay was recognized in Taylor v. Megargee, 2 Pa. 225, as sufficient to rebut the presumption. There are convincing reasons for the ruling that proof of the insolvency of the debtor alone will not rebut the presumption. An insolvent may be possessed of property or be in receipt of an income, and have the means of payment; but proof of positive inability to pay is in effect proof that payment could not have been made."

In the present case we have proof of a long continued inability of the debtors to pay; that the surviving debtor recognized the existence of the indebtedness in 1914, stating in effect her inability to pay, and requesting the witness to see the creditor and ask indulgence; that the witness complied with the wishes of the mortgagor, and, as a result of the interview, the debtor received the letter in evidence, informing her that no steps to enforce payment of the indebtedness would be taken during her lifetime, or so long as the property remained in her possession. This evidence the jury accepted as true, and was sufficient, under the decisions, to overcome the presumption of payment arising from lapse of time.

The judgment is reversed, and the record remitted with direction that judgment be entered on the verdict.