## Commonwealth v. Morse.

*Criminal law—Imprisonment — Medical expenses of prisoner—Voluntary payment by prisoner—Act of May 31, 1919.*

1. Under the Act of May 31, 1919, P. L. 356, where a prisoner has been removed under an order of court to a hospital for surgical or medical treatment, the expenses of such treatment are a charge upon the county; but if the prisoner has voluntarily paid the hospital and the physicians for such treatment, he is not entitled to have the sum paid deducted from the amount of the fine which he was sentenced to pay.

2. In such a case, if it appears that such payment by the prisoner was without compulsion and entirely voluntary on his part, he cannot subsequently claim that he was ignorant of the law which imposed such costs upon the county.

Rule to show cause why deduction should not be made from fine imposed. Q. S. Susquehanna Co., Aug. Sess., 1924, No. 30.

*G. E. Gardner*, County Solicitor, for plaintiff; *J. M. Kelly*, for defendant.

SMITH, P. J., Sept. 7, 1926.—The above defendant, while in confinement in the county jail under sentence of six months' imprisonment by this court and payment of costs and $600 fine, became ill, and, upon his petition, we, under the Act of May 31, 1919, P. L. 356, obviously enacted by the proper promptings of humanity to prisoners so afflicted, ordered his transfer to the S. H. Barnes Memorial Hospital, in this county, "for medical or surgical care and treatment for such disease as he may, after diagnosis, be found afflicted with," with permission for his securing an X-ray photograph by an expert in the City of Binghamton, N. Y., upon his promise to afterwards return to the hospital in this county, which he fulfilled. Our order further required his return to the county jail, after convalescence warranted, to complete the term of prison sentence imposed.

The diagnosis resulted in an operation for appendicitis, and the defendant was not sufficiently recovered for his return to the jail until after the expiration of period of sentence, and he thereupon deposited $600, the amount of the fine imposed, with his attorney, J. M. Kelly, Esq., "to await the decision of this court on the present rule thus granted and the defendant discharged."

During and for the diagnosis, care and treatment of the defendant for his ailment above stated charges, by the agreement of facts submitted to us, properly incurred and reasonably necessary, amounted to $544.90, of which the defendant personally and under the agreement paid the following items:

| | |
|---|---|
| Binghamton City Hospital | $16.00 |
| U. Kahn, M. D | 25.00 |
| S. H. Barnes Hospital | 102.90 |
| A. J. Denman, M. D | 30,00 |
| W. J. Congdon, M. D | 65.00 |
| Or total of | $238.90 |

The primal question submitted for our consideration and decision under this rule is whether the defendant, Milton Morse, is entitled to have abated and deducted from the $600 fine the aggregate $238.90 of the items so paid by him, and the county only entitled to collect and receive the balance, being the difference between the total necessary disbursement of $544.90, to wit, the sum of $306, or whether the county is entitled to receive the entire amount of fine, $600, without any such deduction.

This question involves the interpretation and application of the provisions of the Act of May 31, 1919, P. L. 356, above cited, and because of its being

recent legislation and, so far as we have been able to find, no decisions of the courts have been rendered thereon, warrants more extended discussion than otherwise would have been required.

That the order for such removal of prisoner is part of his *sentence* is apparent from the language of the act. That upon the conditions for such action by the court, "the court shall have power to modify its *sentence* and provide for the *confinement* and care of such convict or person in some other institution where proper treatment may be administered," and upon recovery of such person the court shall "recommit him or her to the jail . . . from which he was removed," and the act (section 2) imposes upon such convict the penalties of the crime of "breach of prison" should he escape while in the institution to which removed.

It is obviously in the discretion of the court as to what institution the convict shall be removed; only that it be "suitable," whether to an actual penal institution for confinement of prisoners or to a hospital the act does not prescribe; the choice of the court suggests a latitude of ascertainment of the character and disposition of the prisoner in question, and also grade of the crime convicted of; as affecting the probabilities of feigned illness and desire of more favorable opportunities for escape; to provide against, the statute is silent as to a guard, such as the Statute of May 8, 1913, P. L. 166, enacts, where the removal of a female prisoner about to become a mother to lodgings outside the jail; where the character of such person and her condition render the prospect of an escape less to be anticipated than many to be imagined under the Act of 1919.

What shall be the procedure to determine all these features is not provided for by the act; in their absence it will be presumed that where the danger from delay is not imminent, hearing should be had and evidence taken, as was adopted at bar; but we can conceive of emergencies, and emergencies where prompt and almost immediate relief by such order must be afforded to save the life of the prisoner in question, and we interpret the purpose of the legislation is to afford the prisoner medical and surgical treatment as near as possible, according to circumstances, as he would resort to himself if free to act, and respect his choice so far as consistent with justice related to him as a criminal and the public against whom he has offended.

The present necessity was comparatively easy of determination, but it may be readily conceived that there may and will arise instances wherein exceedingly difficult propositions may be presented to the court; and, so far discussed, we have presented features concerning which more definite legislation by way of amendment or otherwise to that existing is desirable to obviate difficulties and clarify procedure, in which we would not omit to observe that the jurisdiction by the Act of 1919 is vested in the *court* only; and in this, and we assume in many counties, the *court* so defined is not always in session, and the conditions for urgent and immediate action are just as likely to arise during vacation as during a court term, and the judge should be then empowered to dispose of the case; and while liberal constructions of the term "court" as "judge in vacation" might be made to meet an emergency, which we do not now decide, legislation so expressed would be better.

The grave responsibility which is liable to attach against an escape, which those confined for desperate crimes would be tempted to attempt, is a suggested feature for legislative consideration.

Returning to the merits of the present rule; as we have interpreted the provisions of the Act of 1919, as the removal affecting only a continuation of

the original feature and prison incarceration, we are of the opinion that the county of such original sentence is as much liable for the payment of reasonable charges incurred for maintenance after as before removal, and in both cases surgical as well as medical services to those so afflicted are included, and the Act of 1919 is to afford facilities of relief and care which do not exist in county jails or county prisons such as in this county.

The total charges and expenses incurred and scheduled in the agreement of county solicitor and attorney for the defendant being averred "reasonable and necessary," we have no doubt of the liability of the county for their payment in full if not otherwise paid to the creditor as presented. But $238.90 of the same having been already paid to them by the defendant himself, we are required to determine the status of the county as to these. Were these payments by the defendant such as to be termed voluntary?

A voluntary payment means one made without compulsion: Amsden v. Danielson (R. I.), 35 Atl. Repr. 70; with full knowledge of the facts: Davis v. Kling, 28 N. Y. Supp. 1026; and such cannot be recovered back; or, as again stated by the court in Lack. T. & S. D. Co. v. Gomeringer, 236 Pa. 179-188: "When one under no liability himself in connection with the debt voluntarily pays it, no equity can arise from the transaction calling for protection;" and at page 189: "It is evident that the right of subrogation can result only when the party paying was not a primary debtor, but yet a party legally liable for the debt at the suit of the creditor." At bar, the application of the defendant is in effect for *subrogation* to the rights of the creditor paid by him against the county to recover from the latter the amounts he paid them.

Ignorance of the law by both parties does not alter the rule declared in the cases above cited: Dilzer v. Beethoven Building Ass'n, 15 Phila. 344, and illustrations of their application appear in the Pennsylvania cases of Runner's Appeal, 121 Pa. 649; McQuaid v. Sturgeon, 77 Pa. Superior Ct. 441; Wheatfield Township v. Brush Valley Township, 25 Pa. 112; Ditman v. Raule, 134 Pa. 400, and Hehn v. Hehn, 23 Pa. 415. The last cited in its facts bears close upon the one at bar; its relation thereto we will later discuss.

As was said by the court in I. H. Co. v. Tuscarora Township (No. 1), 43 Pa. Superior Ct. 410-415: "The difficult question is, who is to be deemed a volunteer within the meaning of the rule," and this is our difficult question at bar. Was Milton Morse a "volunteer" in making these payments for which we have decided the County of Susquehanna is personally liable?

Paraphrasing for purposes of definition, a "volunteer" is one who without any duty, moral or otherwise, pays the debt of another on some sort of compulsion: Webster & Goldsmith's Appeal, 86 Pa. 409. Or, again: "One who has paid the debt of another without any assignment or agreement for subrogation, being under no legal obligation to make the payment and not being compelled to do so for the preservation of any rights or property of his own:" Leggate v. Korn, 74 Pa. Superior Ct. 383, citing Mosier's Appeal, 56 Pa. 76.

The liability of the county for such charges of maintenance, as we are considering being decided, obviously the county commissioners representing the county are the contracting parties as to whom and the amount payments are to be made, either by express contract or impliedly through allowing the convict to do so himself, or by express authority, upon which point the agreement of facts at bar is silent, which we deem immaterial in view of our final conclusions, and also because it is agreed they were "reasonable and necessary."

The decision which we have found bearing the closest analogy to the facts at bar is the one above cited as Hehn v. Hehn, 23 Pa. 415, and is authority

Commonwealth v. Morse.

that one who voluntarily expends money in the support of a lunatic cannot recover such expenditure either against the committee or the lunatic, and it may be urged is distinguishable from that at bar, in that the defendant, Morse, may be properly considered as the implied agent of the county in contracting the debt in question, and, therefore, in a superior position to that of the payor in the case last cited, and likewise impliedly acting within the scope of his implied authority from the county commissioners and entitled to the subrogation he claims. This appears to have been otherwise decided in Mattes v. Jamison, 1 North. 280 (cited Vale's Dig. Dec., col. 1770), to the effect that "money voluntarily paid by an agent acting in the scope of his authority to a creditor claiming it is due from the principal cannot be recovered back," in which we are inclined to concur in the absence of more controlling circumstances, and hold that the defendant is without equities entitling to subrogation as to the amount stated of $238.90 paid by him, and that such payment, under the facts embodied in the agreement of them submitted, extinguished and satisfied the same, a conclusion arrived at in Hyndman v. Garney, 17 Luzerne Legal Reg. Rep. 89, following Lack. T. & S. D. Co. v. Gomeringer, 236 Pa. 179, upon their facts.

We add another reason which occurs to us against the equity or justice of the claim for subrogation here made, that we are of the firm conviction that the county is the real party who should be reimbursed by the defendant in such cases where he is of sufficient ability to pay, and wish to be understood that the primary liability of the county is to the creditors only for such character of maintenance. It can readily be conceived that there may be convicts subject to such humane consideration possessed of ample means to pay; and we believe there would be no injustice whatever to such in holding them liable, and, where responsible, they should reimburse the county instead of being reimbursed by the county.

Whether an implied liability enforceable upon an implied assumpsit exists we will not now decide, as it is not a question before us; but we see no reasons why express statutory authority for such collection should not be enacted; as reasonably proper and just as now provides for the collection of the expenses incurred in analogous cases, such as where habitual drunkards are committed to asylums under the 12th section of the Act of June 26, 1895, P. L. 377; likewise as incorporated in the statute relating to criminal procedure against lunatics: Act of March 31, 1860, § 70, P. L. 446 (Purd. Dig., 2403), and Act of May 14, 1874, § 5, P. L. 160 (2 Purd. Dig., 2405).

We concede that much we have said is foreign to a decision of the direct question involved in a disposition of the rule before us; but, in view of the newness of the Act of 1919, not before interpreted by any decision we have discovered, and its obvious defects, to which we have called attention, we think we are justified in our observation thereon.

And now, to wit, Sept. 7, 1926, the rule for reimbursement of the defendant, Milton Morse, from the county and subrogation as to the items stated in the agreement of facts submitted as paid by him to the creditors named therein, aggregating the sum of $238.90, is discharged, and it is ordered that the entire sum of $600 fine imposed by this court upon him shall be paid by him or his attorney, J. M. Kelly, Esq., in whose hands the agreement states it is now on deposit subject to our decision herein, to the Sheriff of Susquehanna County, for the use of said county, and that said defendant, Milton Morse, pay the costs of these proceedings.

Exceptions noted and bill sealed for the defendant, Milton Morse.

From Gerritt E. Gardner, Montrose, Pa.