Sandmann et ux., Appellants, *v.* Old Delancey
Building & Loan Association.

Argued October 10, 1957. Before RHODES, P. J.,
HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WAT-
KINS, JJ.

*Herman P. Weinberg,* for appellants.

*Leo T. Connor,* attorney for appellee.

OPINION BY ERVIN, J., November 12, 1957:

The orders (1) dismissing the complaint in the action to quiet title and (2) directing that judgment be entered for plaintiff in the mortgage foreclosure proceeding are affirmed on the following excerpts from the adjudication of President Judge OLIVER for the court below: "These two actions were consolidated for trial without a jury. The first action was instituted by George W. Sandmann against the Old Delancey Building and Loan Association to remove a mortgage as a cloud on his title to premises, 1528 South 4th Street. The complaint in that action was filed on June 1, 1956. Subsequently, on October 23, 1956, Old Delancey filed a complaint to foreclose this mortgage.

"The mortgage was obtained in 1935 by George Sandmann, the father of the present mortgagor [sic—present owner], George W. Sandmann. The father died in 1940 and, in 1954, the mother transferred title to George W. Sandmann. During the period involved in this action, George W. Sandmann lived with his parents. He contends that the mortgage should be stricken as there has been no payment, or demand for payment, for more than twenty years.

" 'The presumption of payment may be rebutted only by clear, satisfactory and convincing evidence beyond that furnished by the specialty itself, that the debt has not been paid, or by proof of circumstances tending to negative the likelihood of payment and sufficiently accounting for the delay of the creditors.' Corn v. Wilson, 365 Pa. 355, 358 (1950); See also Osborne Estate, 382 Pa. 306 (1955); Haughy v. Dillon, 379 Pa. 1 (1954); Jones v. Steinberg, 178 Pa. Super. 517 (1955).

"The mortgage in question, created in 1935, was in the amount of $600.00 and was junior to an HOLC first

mortgage of $3200. There was a clause in the second mortgage that it could not be enforced for five years.

"To rebut the presumption of payment of this mortgage, there must be 'proof of circumstances tending to negative the likelihood of payment and sufficiently accounting for the delay of the creditors.'

"As to the delay, we note that this was a second mortgage and that, by its own terms, *it was not enforceable until 1940*. The fact that it was a second mortgage explains the mortgagee's hesitancy in thereafter enforcing it. In fact, there was testimony by the mortgagor [sic—present owner] himself that, as late as 1952, the first mortgage was still not completely satisfied.

"To negative the likelihood of payment, we have the testimony of the treasurer of the building and loan association, who stated that he had been treasurer of Old Delancey since before this particular loan was made, that the mortgage was frequently discussed at directors' meetings, that he personally kept the books, that he was the only one to make deposits for the association, and that no payments had been made on this mortgage. The mortgage was not marked 'Satisfied' in the Recorder's office, and the mortgagor [sic—present owner] admitted that, even though he lived with his parents, he was not aware of any payment ever having been made on this mortgage. Further, in 1952, two years before he took title, the present mortgagor [sic—present owner] learned of Old Delancey's lien. At that time his attorney wrote to Old Delancey, admitted that Old Delancey had a second mortgage on these premises, and asked what amount it would accept to satisfy their junior lien.

"Under the facts, we find that there was sufficient proof to 'negative the likelihood of the claim having been satisfied and to explain the delay of the creditor in attempting to enforce it.'"

Appellants argue that the letter written by their attorney to the association in 1952 may not be used as an admission of the debt because, they contend, it was merely an offer of compromise. In *Mannella v. Pittsburgh*, 334 Pa. 396, 403, 6 A. 2d 70, Mr. Justice STERN, later Chief Justice, said: "While an offer to pay a sum of money to compromise a dispute is not admissible in evidence to prove that the sum offered was admitted to be due, the distinct admission of a fact is not to be excluded because it was accompanied by an offer to compromise the suit: Sailor v. Hertzogg, 2 Pa. 182, 185, 186; Arthur v. James, 28 Pa. 236; Bascom v. Danville Stove & Manufacturing Co., 182 Pa. 427, 441; Rabinowitz v. Silverman, 223 Pa. 139." In this letter the attorney said: "I represent George W. Sandmann whose mother is the present owner of the captioned premises. Old Delancey Building and Loan Association, which I understand you represent, holds a second mortgage on the premises executed in January 1935 in the sum of $600.00 and recorded in Mortgage Book J. M. H. No. 7468, Page 345.

"In addition to a first mortgage against the premises held by Unity Building and Loan Association there is your client's second mortgage, a Department of Public Assistance lien and, at the present time, a notice from the Bureau of Building Inspection to repair one of the walls of the property.

"Mr. Sandmann on behalf of his mother is trying to preserve the property and to raise some funds in order to make the necessary wall repairs. Will you be kind enough to have your association look into the matter and advise me what amount they will accept on this junior lien to satisfy the same." The letter is really not an offer of compromise but is a request for an amount which the association "will accept on this junior lien to satisfy the same." Even if this should be

considered as an offer of compromise, it could not destroy the distinct admission that the association holds a second mortgage for $600.00 against the property. This was not an offer of compromise made "without prejudice" as was the case in *Jones v. Steinberg,* 178 Pa. Superior Ct. 517, 521, 115 A. 2d 803.

The record in this case is not entirely satisfactory. The mortgage was not offered in evidence. We gather from the stipulation of the parties that the mortgage contained a clause that prevented foreclosure for a five-year period. The mortgage was executed on January 26, 1935 and was for a term of five years. It may very well be that the twenty-year period did not start to run until January 26, 1940, and if this be so, the foreclosure action, which was instituted on October 23, 1956, would have been in time. This would be another reason for sustaining the action of the court below.

Orders affirmed.