Wyatt *v.* Mount Airy Cemetery, Appellant.

Argued November 14, 1966. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

*William J. Krzton,* for appellant.

*Clarence H. Clasper,* with him *Shoemaker, Eynon, Clasper, Rolston & Theophilus,* for appellee.

OPINION BY HOFFMAN, J., December 16, 1966:

On September 17, 1917, appellant, Mt. Airy Cemetery, issued a certificate of indebtedness under seal in the amount of One Thousand dollars with interest thereon at four percent (4%) per annum to Walter O. Heck. A similar certificate was issued to J. Francis Heck on that same day.

The record reflects that at a later date, Ida Heck, wife of Walter O. Heck, received both of these bonds from her husband, either as donee or legatee.[1] Ap-

---

[1] How Walter O. Heck came into possession of the bond of J. Francis Heck is not clearly set forth in the record.

pellee, Lois Jean Wyatt, daughter of Ida Heck, became a holder of these bonds as legatee under her mother's will in 1963.

On January 5, 1965, appellee brought this action in assumpsit to recover the face amount of the two bonds ($2000) with interest which she alleged was unpaid from the date of issue to December 1, 1941. This case was tried without a jury before Judge WALKER on April 1, 1965, and judgment in the sum of $3416.00 was entered for appellee. This is an appeal from that judgment.

Appellant first contends that the evidence produced by appellee failed to overcome the presumption of payment of interest after twenty years.

At trial, appellee claimed that no interest had been paid on the bonds for the period from September 1, 1917 to December 1, 1941, and, that she, as present owner, was entitled to that interest. Appellant argued, however, that more than twenty years had elapsed since December 1, 1941, when even the last interest payment would have been due, and, consequently, appellee's claim was barred by the presumption of payment after twenty years.

This evidentiary rule was set out most recently in *Rosenbaum v. Newhoff*, 396 Pa. 500, 502-3, 152 A. 2d 763 (1959), in which the Supreme Court of Pennsylvania stated: "After the lapse of twenty years, all debts . . . not within the orbit of the Statute of Limitations are presumed to have been paid. . . . *Until* the passage of twenty years it is the burden of the debtor to prove payment; *after* the passage of twenty years, it is the burden of the creditor to establish nonpayment and for the satisfaction of such burden the evidence must be clear and convincing and must consist of proof other than the specialty itself."

The Supreme Court further explained in *Snyder Estate*, 368 Pa. 393, 396-97, 84 A. 2d 318 (1951):

"Long lapse of time, plus facts and circumstances from which an inference of payment may be legitimately inferred, raise a presumption of payment, but 'the presumption of payment . . . does not work an extinguishment of the debt. . . . *It is a presumption merely of fact*, and amounts to nothing more than a rule of evidence which reverses the ordinary burden of proof and makes it incumbent upon the creditor to prove, . . . that the debt was not actually paid. *This burden may be met by direct testimony as to non-payment*, or by proof of circumstances tending to negative the likelihood of the claim having been [paid or] satisfied and explaining the delay of the creditor in attempting to enforce it . . .': Grenet's Estate, 332 Pa. 111, 113, 2 A. 2d 707. Evidence sufficient to raise a presumption of payment cannot prevail against positive credible evidence of non-payment: Grenet's Estate, 332 Pa. 111, 2 A. 2d 707; Sheafer v. Woodside, 257 Pa. 276, 101 A. 753; Krewson v. Erny, 158 Pa. Superior Ct. 380, 382, 45 A. 2d 240."

Thus, any acknowledgment of the debt, even after the twenty year period, could overcome the presumption of payment. *Grenet's Estate*, supra; *Eby v. Eby*, 5 Pa. 435 (1846).

In the instant case we find that, although the bonds called for interest of only 4 per cent per annum, appellant made the following payments between 1943 and 1954:

1943 8 per cent; 1944 8 per cent; 1945 8 per cent; 1946 7 per cent; 1947 7 per cent; 1948 7 per cent; 1949 8 per cent; 1950 5 per cent; 1951 1 per cent; 1952 4 per cent; 1953 4 per cent; 1954 4 per cent.

Thus, from 1943 to 1954, appellant regularly made interest payments which were far in excess of the yearly rate specified in the bonds.[2] The only reasonable

---

[2] Judge WALKER, in the lower court, took these excess payments into account in calculating the judgment.

explanation for these extra payments was that appellant had not paid interest in full prior to 1943.

More importantly, the direct testimony of appellant's president could establish that interest had not been paid prior to 1940:

"Q. Did you find from the corporate records any minutes covering the authorizations of payment of interest for any year between 1917 and 1940?

"A. I couldn't find anything. I didn't read the minutes. I went through the checks.

"Q. And you found no record of any payment of interest to any holder or any certificate holders?

"A. I couldn't find any."

. . .

"Q. So that between the years of 1943 and 1951, the Board of Directors paid additional amounts of interest in excess of four (4%) per cent, is that correct?

"A. That is correct."

. . .

"Q. As a matter of fact, was the Board of Directors not trying to catch up on the interest payments that had been passed and not paid?"

. . .

"A. I imagine that was the idea."

. . .

"Q. So that any interest that was paid was by reason of the fact the corporation was indebted to the particular holder of that certificate?

"A. Right."

. . .

"Q. According to the records of the corporation, was anybody paid any interest from the period of 1918 until you say, 1940? Was any holder?

"A. Not to my recollection. I haven't gone through the minutes that thoroughly to check that part of it, but not to my recollection."

In short, appellant's payment of delinquent interest during the period from 1943 to 1951 and the testimony of appellant's president sufficiently rebutted the presumption that interest had been paid in full from 1917 to 1941. The lower court's finding that additional payments were yet due from appellant is supported by the evidence and will not be reversed on appeal. See *Snyder Estate,* supra, p. 397.

Appellant also contends that appellee's predecessor, Walter O. Heck, had waived the right to such payments or, in the alternative was estopped from claiming them.[3] This contention is based on the following circumstances:

On May 24, 1954, appellant's Board of Trustees passed the following resolution: "Unanimously agreed that the interest paid on May 24, 1954, is payment in full of all interest due on certificates of indebtedness to June 30, 1954." Walter O. Heck was a member of appellant's Board of Trustees from 1917 to 1958. Appellant contends, therefore, that as a trustee, Heck was chargeable with knowledge of the resolution and was bound by it. We do not agree.

It is well established that Walter O. Heck could not be deprived of his rights as a bondholder by the action of the Board of which he was a member, without his consent. *Philad. & R. R. Co. v. Love,* 125 Pa. 488, 17 A. 455 (1889). Appellant argues, however, that Heck impliedly waived his rights or was estopped from asserting them because he remained silent and

---

[3] In dealing with this argument, both parties agree that appellee was not a holder for value in due course, since she received the certificate as a legatee through Walter O. Heck. See Uniform Commercial Code, Act of April 6, 1953, P. L. 3, §3-302(1)(a) and (3)(b), 12 A P.S. §3-302(1)(a) and (3)(b). Consequently, her rights rise no higher than her predecessor's and are subject to all defenses which would be available in an action on simple contract. U.C.C. §3-306.

accepted further interest payments of 4% per annum. In support of this argument, appellant relies on the very clear summary of the applicable law in *Brown v. Pittsburgh,* 409 Pa. 357, 186 A. 2d 399 (1962), in which the Supreme Court stated:

"A waiver in law is the act of *intentionally* relinquishing or abandoning some known right, claim or privilege. See, Bell's Estate, 139 Pa. Superior Ct. 11, 10 A. 2d 835 (1940); and, Sudnick v. Home Friendly Insurance Co., 149 Pa. Superior Ct. 145, 27 A. 2d 468 (1942). To constitute a waiver of legal right, there must be a clear, unequivocal and decisive act of the party with knowledge of such right and an evident purpose to surrender it: Kahn v. Bancamerica-Blair Corporation, 327 Pa. 209, 193 A. 905 (1937), and Cole v. Phila. Co., 345 Pa. 315, 26 A. 2d 920 (1942). Waiver is essentially a matter of intention. It may be expressed or implied. . . . ' " [I]n the absence of an express agreement, a waiver will not be presumed or implied contrary to the intention of the party whose rights would be injuriously affected thereby, unless by his conduct the opposite party has been misled, *to his prejudice* . . . into the honest belief that such waiver was intended or consented to." ' Atlantic Ref. Co. v. Wyoming Nat. Bank, 356 Pa. 226, at 236-237, 51 A. 2d 719 (1947), reaffirming what was said in Dougherty v. Thomas, 313 Pa. 287, 169 A. 219 (1933). In short, the doctrine of implied waiver in Pennsylvania applies only to situations involving circumstances equivalent to an estoppel, and the person claiming the waiver to prevail must show *that he was misled and prejudiced thereby*: Frazee v. Morris, 155 Pa. Superior Ct. 320, 38 A. 2d 526 (1944), and Barr v. Deiter, 190 Pa. Superior Ct. 454, 154 A. 2d 290 (1959)."

In the instant case Walter O. Heck did not attend the meeting at which the resolution was adopted. He was never sent notice of the Board's action. No con-

sent to the resolution was ever obtained from him nor did he ever expressly accede to it. In short, there is absent in this case any "clear, unequivocal or decisive act" by Heck which would evidence an intent to surrender his rights.

Moreover, we cannot agree with appellant that Heck impliedly waived his rights or was estopped from raising them because he remained silent and accepted further interest payments of 4% per annum. Even if Heck had known of the resolution and failed to speak, such silence could not give rise to an implied waiver or estoppel, because appellant was not misled to its prejudice thereby. Nothing in the record indicates that appellant, relying on Heck's failure to dissent, acted to its detriment. The fact that Heck accepted interest payments of 4% per annum after the resolution had been adopted certainly did not prejudice appellant, since such payments were already due and owing under the very terms of the bonds.

In summary, we hold that

(1) The evidence introduced by appellee at trial rebutted the presumption of payment of interest on the certificates of indebtedness; and

(2) Appellee's predecessor did not waive, either expressly or impliedly, his right to delinquent interest, nor was he estopped from claiming such payments.

We conclude, therefore, that the judgment of the lower court should be affirmed.

Judgment affirmed.