## Greathouse v. Federal Kemper Insurance Company

*Solomon & Solomon*, for plaintiff.

*Cusick, Madden, Joyce & McKay*, for defendant Kemper.

*Richard A. Harper*, for defendant Motorist Mutual.

HENDERSON, *S.J., Specially Presiding*, February 5, 1980—This case which is before the court on plaintiff's motion for summary judgment presents an unusual fact situation requiring an interpretation of the Pennsylvania No-fault Motor Vehicle Insurance Act of July 19, 1974, P.L. 489, 40 P.S. §1009.101 et seq.

On December 31, 1976, plaintiff was a resident of Ohio where he lived in the household of his father, Stanley Greathouse. On that date he borrowed his father's truck and drove from his home to the home of a friend in Lawrence County. This truck was insured by Motorist Mutual Insurance Company (Motorist) with Stanley Greathouse as named insured. After arriving at his friend's house, plaintiff entered a vehicle owned by Richard John Brunswick of New Castle (Lawrence County). At approximately 9:30 p.m. this vehicle went off the road and struck a utility pole, resulting in serious injury to plaintiff. At the time of the accident, the Brunswick vehicle was insured by the Federal Kemper Insurance Company (Kemper).

Plaintiff subsequently filed an action against Richard Brunswick for residual tort damages and

made claim to Kemper for benefits pursuant to the No-fault Act. The tort suit was settled and Kemper, acknowledging plaintiff's claim, began the payment of no-fault benefits. However, after making two such payments, Kemper determined that Motorist was the applicable security under the act, notified both plaintiff and Motorist of this fact and refused to pay any further benefits. Motorist in turn denied its responsibility and plaintiff was forced to file the present action against both companies to seek compensation.

Both plaintiff and Kemper argue that the present situation is controlled by section 204 of the Pennsylvania No-fault Motor Insurance Act of July 19, 1974, P.L. 489, sec. 204, 40 P.S. §1009.204, which sets forth the sources of basic restoration benefits. The pertinent part of section 204 states:

"(a) Applicable security.—The security for the payment of basic loss benefits applicable to an injury to:

"(1)(1) . . .

"(2) an insured is the security under which the victim or deceased victim is insured;

"(3) the driver or other occupant of a motor vehicle involved in an accident resulting in injury who is not an insured is the security covering such vehicle;

"(4) . . ."

Under this analysis, if the injured party (plaintiff) is "an insured," his security (Motorist) is the source of benefits; if not, security for the automobile (Kemper) is the source. "Insured" is defined in section 103 of the act, 40 P.S. §1009.103, as:

"(A) an individual identified by name as an insured in a contract of basic loss insurance complying with this act; and

"(B) a spouse or other relative of a named insured, . . . and a minor in the custody of a relative of a named insured if (i) not identified by name as an insured in any other contract of basic restoration insurance complying with this act; and (ii) in residence in the same household with a named insured."

Without a doubt, plaintiff meets these requirements *if* (and only if) his father meets the definition of a "named insured" set forth in section (A). Since the father is a resident of Ohio, which does not have an equivalent to the Pennsylvania No-fault Act, his insurance contract with Motorist must be analyzed to see if it is in compliance with the act.

Compliance must be examined against the backdrop of section 104(a) of the act which required: "Every owner of a motor vehicle which is registered or which is operated in this Commonwealth by the owner or with his permission, shall continuously provide security covering such motor vehicle while such vehicle is either present or registered in the Commonwealth. . . ."

Defendant-Motorist would have us construe this sentence to read "Every *Pennsylvania* owner of a motor vehicle . . .," arguing that the legislature included the terms "operated" and "present" only as a means of closing the loopholes which "registered" alone would provide. In the absence of an affirmative indication by the legislature of such an intent, this court cannot accept such an interpretation. One difficulty with this argument is that there is no ambiguous language in the statute that provides an excuse for reading into it the exclusion Motorist desires. In the absence of ambiguity, we have no occasion to be concerned with legislative intent: Daugherty v. Continental Can Company, Inc., 226

Pa. Superior Ct. 342, 313 A. 2d 276 (1973). Moreover, even if we were to find such an ambiguity to exist, the legislative intent does not support Motorist's position. As Motorists's brief has recognized, the legislature intended that *every* accident victim be covered if involved in an accident in Pennsylvania. This intent is clearly manifested in section 102 as well as the rest of the act. It seems unreasonable, therefore, to hold that the legislature, while intending a foreign driver be covered, did not intend to include the same foreign driver in section 104. The wording of this section also provides a clear basis for distinguishing Security Insurance Co. v. Howgate, 343 So. 2d 641 (1977), upon which Motorist relies. In that case, the Florida court found that a Texas resident who owned a car in his home state was not an owner with respect to which security is required under the Florida no-fault statutes. Although the court did not quote the statute, our understanding is that Florida requires security only for automobiles *registered* in that state (as opposed to "registered" or "operated" under our statute).

This interpretation does not, as Motorist argues, require the court to ignore section 110 or the regulations promulgated under it. Instead, it gives effect to section 110 in a manner more befitting the language used therein. Section 110(a) and 110(b) concern owners who have complied with the Pennsylvania requirements and are traveling outside the Commonwelth and do not apply here. Section 110(c)(1), which does apply, concerns only the computation of basic loss benefits. For example, it decides the issue of whether a New Jersey driver (who is covered under that state's Automobile Reparation Reform Act, L. 1972, c. 70, sec. 1, N.J.S.A. 39 6A-1 et seq.) is to receive benefits in

accordance with section 202 of the act or in accordance with the comparable New Jersey statute. As such, it also necessarily considers owners whose states of domicile do not have comparable plans, limiting their benefits to those allowed under section 202.

This court therefore finds that the Pennsylvania No-fault Act does require non-residents to maintain insurance in compliance with the act while their automobiles are present in the Commonwealth. Thus, the endorsement attached to plaintiff's policy (providing that the coverage afforded by that policy shall comply with any such requirements) is applicable. Plaintiff's father is therefore a "named insured" under the act, plaintiff is "an insured" under the act, and Motorist is the applicable security under section 204.

This court can see no merit in Motorist's argument that Kemper has waived its right to deny coverage. A waiver is the act of intentionally relinquishing some known right, claim or privilege. "In the absence of an express agreement, a waiver will not be presumed or implied contrary to the intention of the party whose rights would be injuriously affected thereby, unless by his conduct the opposite party has been misled, to his prejudice, into the honest belief that such a waiver was intended or consented to." Atlantic Refining Co. v. Wyoming Nat. Bank of Wilkes-Barre, 356 Pa. 226, 236, 51 A. 2d 719, 725 (1947). That is, the doctrine of implied waiver applies only in circumstances equivalent to an estoppel, and *the person claiming the waiver to prevail must show that he was misled and prejudiced thereby:* Wyatt v. Mount Airy Cemetery, 209 Pa. Superior Ct. 250, 224 A. 2d 787 (1966).

In the present case, there is no clear, unequivocal waiver agreement. Further, Motorist has not shown that Kemper's action (beginning to pay benefits) misled or prejudiced them in any way.

Section 106(a)(2) of the act mandates interest at the rate of 18 percent per annum if no-fault benefits are not paid within 30 days of receipt of submission of reasonable proof of the fact and amount of loss sustained. Since it is uncontested that such notice reached Motorist on April 28, 1978, payment became overdue 30 days later. Since payment was not made, Motorist must also be held liable for interest from the date the payments became overdue.

Finally, plaintiff seeks attorney's fees based on section 107 of the act. However, he mistakenly relies on section 107(1) in claiming that recovery of attorney's fees is automatic. Section 107(1) applies only in cases where the obligor pays after receipt of notice of representation, but before the court decides the matter. Any other interpretation would render section 107(3) a nullity and is therefore improper.

Under section 107(3), which is applicable, in an action to recover no-fault benefits, the court may award attorney's fees if it determines that the obligor has denied the claim without reasonable foundation. Although the absence of a judicial precedent will not invariably provide an insurance carrier with a reasonable foundation for denying a claim, where, as here, a nonfrivolous issue is one of first impression, such fact is entitled to substantial weight in determining whether the denial is without reasonable foundation: Hayes v. Erie Insurance Exchange, _____ Pa. Superior Ct. _____, 395 A. 2d 1370 (1978). It is also significant that plaintiff has nowhere sought to attribute bad faith to

Motorist's denial of the claim. Although the court has rejected Motorist's interpretation of the act, the issue was novel and not without substance. Motorist's denial therefore was not without reasonable foundation and plaintiff should not recover his attorney's fees.

## ORDER

Now, February 5, 1980, in conjunction with the opinion filed herewith, it is hereby ordered, adjudged and decreed that summary judgment is granted in favor of plaintiff against Motorist Mutual Insurance Company, and judgment is also granted in favor of Federal Kemper Insurance Company.

Interest at the statutory rate is granted on this judgment from and after April 28, 1978. No attorneys fees shall be awarded herein.