**Kim GRIFFITH, Plaintiff,**

**v.**

**MELLON BANK, N.A., Defendant.**

**No. Civ.A. 02–8944.**

United States District Court,
E.D. Pennsylvania.

Aug. 4, 2004.

York) at the time the action commenced, plaintiff has not established this fact by a preponderance of the evidence.

Patrick J. O'Connor, Thomas B. Fiddler Aaron Richard Krauss, Cozen O'Connor, Philadelphia, PA, for Defendant.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

Plaintiff Kim Griffith ("Griffith") filed this action against defendant Mellon Bank ("Mellon") after Mellon refused to pay, on August 15, 2002, a bearer certificate of deposit purportedly issued by Mellon more than twenty-seven years ago in the amount of $530,000. The certificate of deposit matured on August 4, 1975. Griffith now demands payment of nearly $2.5 million dollars in principal and interest. Mellon has refused to honor the certificate of deposit, alleging that (1) there is no proof that it issued the certificate of deposit (i.e., that the certificate of deposit is genuine); and that (2) even if the certificate of deposit was issued by Mellon, it has already been paid.

Before the court are cross motions for summary judgment. The court finds that, because Griffith has not sustained his burden under Pennsylvania law of rebutting the presumption that a certificate of deposit twenty years old or older has already been paid to a person entitled to enforce the instrument, Griffith's motion for partial summary judgment should be denied and summary judgment in favor of the defendant is appropriate.

## I. FACTS [1]

At the end of January 2001, while cleaning out his self-storage locker in Largo, Florida, plaintiff Kim Griffith found a certificate of deposit purportedly issued by Mellon Bank, N.A. of Pittsburgh, Pennsylvania on July 3, 1975 for the amount of

Sally J. Daugherty, Rawle & Henderson, LLP, Phila, PA, for Plaintiff.

---

1. The facts recited below are either undisputed or the court has accepted Griffith's version of the facts.

$530,000.[2] The certificate is entitled "Negotiable Certificate of Deposit, No. I–48346" and states as follows:

> This certifies that there has been deposited with this Bank the sum of FIVE HUNDRED AND THIRTY THOUSAND AND 00/100* * DOLLARS $530,000.00* which will be paid To Bearer on AUGUST 4, 1975 with interest at the rate of 5.75% per annum on presentation of this certificate at any office of this Bank in Pennsylvania. This deposit is not subject to check, draft or any form of withdrawal prior to the above maturity date.[3]

Griffith and his wife found the certificate in one of several books stored in their storage locker as he and his wife were shaking out all of the books in the locker.[4] Griffith purchased the books in the locker from an unnamed person.[5] On its face, the certificate of deposit had not been marked paid.

On August 15, 2002, more than a year after finding the certificate of deposit, Griffith presented it for payment in person at a Mellon Bank office in Pennsylvania.[6] Mellon refused to honor the certificate of deposit. Although Griffith's certificate of deposit generally looks like certificates of deposit Mellon would have issued in 1975, Mellon contended that because the bearer certificate of deposit matured twenty-seven years earlier, the certificate was questionable on its face and thus was not genuine.[7]

On December 9, 2002, based on Mellon's refusal to honor the certificate of deposit, Griffith filed suit against Mellon, seeking: (1) payment of the certificate of deposit (Count I), (2) recovery for alleged fraud on the part of the bank (Count II),[8] and (3)

2. As a threshold matter, Mellon argues that there is no evidence that Griffith's certificate of deposit is genuine (or, in other words that the certificate of deposit was actually issued by Mellon). Specifically, they argue that the manner in which the certificate of deposit was found, i.e. twenty-six years after its maturity date and in an old book kept in storage locker, casts substantial doubt on whether the certificate is genuine. Notwithstanding the fact that the certificate of deposit was examined by a document specialist employed by Mellon, neither party has proffered an expert opinion as to the genuineness of the certificate of deposit. Clearly, then genuine issues of material fact remain as to the genuineness of the certificate of deposit. However, because the court finds that defendant is entitled to the judgment as a matter of law even assuming that the certificate was issued by Mellon in 1975, the court will accept, for the purposes of this motion, Griffith's assertion that the certificate of deposit is genuine.

3. Pl.'s M. for Part. Summ. J., Exh. A.

4. Mellon points out there was a discrepancy between Griffith's deposition testimony and that of his wife as to whether the certificate of deposit was found on the floor of the storage area or actually in a book. Because the reso-lution of this issue of fact is not material to the disposition of this case, the court has simply accepted Griffith's version of the facts.

5. Griffith does not remember how much he paid for the books and has presented no corroborating evidence that he paid consideration for the books. See Def.'s M. for Summ. J., Deposition of Kim Griffith at 119–120, 125. For the purpose of this motion however, the court will assume that the books were acquired for value and that Griffith purchased the books stored in the locker.

6. Griffith first contacted Melllon about the certificate of deposit in February of 2001. Dep. of Griffith at 87.

7. Def.'s M. for Summ. J., Deposition of William R. Ireland at 9. However, Mr. Ireland testified that, on the basis of the picture of the certificate of deposit shown to him, one of the "authorized signatures" on the certificate appeared to be his signature and that he had no reason to think it was not his signature.

8. Griffith alleged that Mellon initially told him that the certificate was not valid, and advised him to destroy the certificate of deposit.

recovery for Mellon's refusal to honor the certificate under the Pennsylvania Unfair Trade Practices and Consumer Protection Law (Count III).[9] Griffith claims that the principal and interest on the certificate of deposit amount to $2,554,164.00.[10]

Mellon filed a motion to dismiss all three counts of Griffith's complaint. After a hearing, the court granted Mellon's motion to dismiss Counts II and III of Griffith's complaint agreeing with Mellon that Griffith had failed to plead all the requisite elements of common law fraud.[11] However, the court denied Mellon's motion as to Count I and granted Griffith leave to file an amended complaint pleading a claim for conversion. After the amended complaint and Mellon's answer were filed, the parties proceeded to discovery on the two theories of breach of contract[12] and conversion.

Discovery has produced the following evidence (or lack thereof): (1) Neither Mellon nor Citibank (Mellon's agent in 1975) has records of the certificates of deposit issued by Mellon (or on its behalf) in 1975;[13] (2) Mellon's earliest records of outstanding certificates of deposit (i.e., those outstanding as of 1987), do not show Griffith's certificate of deposit as unpaid;[14] (3) William Ireland, the former Assistant Vice–President in charge of Mellon's loan department, testified from personal knowledge (through being responsible for Mellon's bearer certificates of deposit during his tenure with Mellon) that every bearer certificate of deposit issued by Mellon during his tenure had been redeemed;[15] (4) Bonnie Parks, the Mellon Assistant Vice President who currently oversees certificate of deposit processing, testified that after doing some research she had concluded that "all outstanding notes had been paid;"[16] (5) the proceeds of Griffith's

---

9. *See* Pa. Stat. Ann. tit. 73, § 201 et seq. (West 1993).

10. The court has jurisdiction to hear the dispute in that Griffith and Mellon are diverse parties. *See* 28 U.S.C. § 1332 (1994).

11. Specifically, Griffith failed to plead reliance and damages. This flaw was fatal to both Count II and III of the complaint since it is well settled that a plaintiff bringing a private action under Pennsylvania's Uniform Trade Practices and Consumer Protection Law ("UTPCPL") must establish the elements of common-law fraud. *See Weinberg v. Sun Co.*, 565 Pa. 612, 777 A.2d 442, 446 (2001).

12. The court has construed Count I of Griffith's amended complaint seeking payment of the certificate of deposit as a claim for breach of contract.

13. Mellon's policy is to keep records of the certificates of deposit it issued for only seven years after payment.

14. Although Griffith has stated that he does not contest this fact, he alleges that the 1987 conversion report appears to be incomplete because the document begins on page 9. *See*

Pl. Resp. in Opp. to Mellon's Mot. for Summ. J., Exh. B.

15. Dep. of Ireland at 25–26. Ireland also testified that the records to support his recollection no longer existed. *Id.* at 26.

Griffith argues that Ireland's testimony is contradicted by the Mellon's own documents which, according to Griffith, show that "hundreds" of bearer certificates issued as early as 1976 were outstanding as of 1982. *See* Pl. Resp. in Opp. to Mellon's M. for Summ. J., Exh. A. Mellon argues that Exhibit A only shows certificates that were issued as early as 1976, and does not show when and if those certificates were redeemed. *See* Dep. of Bonnie Parks at 171. Because neither party has provided the court with sufficient evidence establishing the contours of the information provided in Exhibit A (and because it is not readily discernible from the report itself), the court is unable to resolve this issue. However, because Griffith fails to satisfy his burden under Pennsylvania law of proving that the certificate of deposit has not been paid, the resolution of this issue of fact (which concerns evidence put forth by the defendant) is not necessary to resolve the instant motions before the court.

16. Def.'s M. for Summ. J., Dep. of Bonnie Parks at 12.

certificate of deposit do not appear in Mellon's financial records;[17] and (6) there is no record that the proceeds of the certificate of deposit escheated to the Commonwealth of Pennsylvania as unclaimed or abandoned property seven years after maturity of the certificate.[18]

At the close of discovery, the parties filed cross-motions for summary judgement. Griffith has moved for partial summary judgment, seeking judgment only on his claim for payment of the certificate. Defendant has moved for summary judgement on both Griffith's claim for payment of the certificate of deposit and Griffith's claim for conversion.[19]

## I. DISCUSSION

### A. *Standard for Summary Judgment*

Federal Rule of Civil Procedure 56(c) is designed to secure a just, speedy and inexpensive determination of cases before they proceed to trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)(citing Fed.R.Civ.P. 1). When confronted with cross-motions for summary judgment "[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." 10A Charles A. Wright, Arthur R. Miller & Mary Kane, Federal Practice and Procedure § 2720 (1998). Thus, with respect to each party, summary judgment is proper when the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is genuine only if the evidence is such that a reasonable jury could find for the non-moving party. *Id.* at 251–52, 106 S.Ct. 2505. In making this determination, a court must draw all reasonable inferences in favor of the non-movant. *See Meyer v. Riegel Prods. Corp.,* 720 F.2d 303, 307 n. 2 (3d Cir.1983), *cert. denied,* 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984). Thus, summary judgment should be grant-

**17.** According to Mellon's standard procedures, when a certificate of deposit matures its proceeds (along with the interest) are moved into a reconciling account. Amounts in this account are subject to daily balances showing how long the proceeds have been in the account. Mellon receives daily reports of what certificates of deposits have matured and should be paid. Mellon's accounting department keeps track of these amounts which are routinely audited. Dep. of Parks at 18, 62, 76–77.

**18.** Mellon argues that the logical inference from the fact that the funds did not escheat is that the certificate was either never issued, or it was paid within seven years of maturity.

**19.** In Count II of his Amended Complaint, Griffith has sued Mellon for common law conversion for refusing to tender the proceeds of the certificate of deposit. Mellon argues, however, that Griffith's common law conversion claim is preempted by section 3420 of Pennsylvania's Uniform Commercial Code. *See* 13 Pa. Cons.Stat. Ann. § 3420(a) (providing that an instrument is converted if "a bank makes ... payment with respect to the instrument for a person not entitled to enforce the instrument").

The court, however, need not address the issue of whether the Uniform Commercial Code preempts common law conversion claims since Griffith's claim fails under either theory. Because the court finds that Mellon has no obligation to pay the certificate of deposit since the presumption under Pennsylvania law that the certificate has already been paid has not been rebutted, *see infra* Part II.B, Mellon cannot be liable for common law conversion. Similarly, Griffith's claim fails under section 3420 since he cannot sustain his burden of proving that the certificate was paid to someone other than a person entitled to enforce the instrument. *See infra* Part II.C.2.

ed only if no reasonable trier of fact could find for the non-moving party. *See id.; Radich v. Goode,* 886 F.2d 1391, 1395 (3d Cir.1989).

### B. *Has the Certificate of Deposit Already Been Paid?*

Even assuming that the certificate of deposit found by Griffith is genuine, Mellon asserts as a defense that the certificate of deposit has been paid. It has long been the law in Pennsylvania that:

> "After the lapse of twenty years, all debts ... not within the orbit of the Statute of Limitations are presumed to have been paid.... *Until* the passage of twenty years it is the burden of the debtor to prove payment; *after* the passage of twenty years, it is the burden of the creditor to establish nonpayment and for the satisfaction of such burden the evidence must be clear and convincing and must consist of proof other than the specialty itself."

*Wyatt v. Mt. Airy Cemetery,* 209 Pa.Super. 250, 224 A.2d 787, 789 (1966) (quoting *Rosenbaum v. Newhoff,* 396 Pa. 500, 152 A.2d 763, 766 (1959)) (emphasis in original).

> The [Pennsylvania] Supreme Court further explained in *Snyder Estate,* 368 Pa. 393, 396–97, 84 A.2d 318 (1951): "Long lapse of time, plus facts and circumstances from which an inference of payment may be legitimately inferred, raise a presumption of payment, but 'the presumption of payment ... does not work an extinguishment of the debt.... *It is a presumption merely of fact,* and amounts to nothing more than a rule of evidence which reverses the ordinary

burden of proof and makes it incumbent upon the creditor to prove, ... that the debt was not actually paid.

*Wyatt v. Mt. Airy Cemetery,* 209 Pa.Super. 250, 224 A.2d 787, 789 (1966) (quoting *In re Snyder's Estate,* 368 Pa. 393, 84 A.2d 318, 321 (1951)) (emphasis in original).[20]

Therefore, when the debt at issue is twenty years old or older, as in this case, the creditor seeking to collect the debt may meet the burden of rebutting the presumption of payment through (1) direct evidence, i.e. "direct testimony as to nonpayment," *Grenet's Estate,* 332 Pa. 111, 2 A.2d 707, 708 (1938), or (2) circumstantial evidence, i.e. "proof of circumstances tending to negative the likelihood of payment and sufficiently accounting for the delay of the creditor" in attempting to enforce the debt. *Oaks Fire Co. v. Herbert,* 389 Pa. 357, 132 A.2d 193, 196 (1957)(quoting *Corn v. Wilson,* 365 Pa. 355, 75 A.2d 530, 532 (1950)); *see also Rosenbaum v. Newhoff,* 396 Pa. 500, 152 A.2d 763, 766 (1963) (citing *Reed v. Reed,* 46 Pa. 239 (1863)). Although "evidence sufficient to raise the presumption of payment cannot prevail against positive credible evidence of nonpayment," *Wyatt,* 224 A.2d at 789, the evidence necessary to rebut the presumption must be "satisfactory and convincing." *In re Frey's Estate,* 342 Pa. 351, 21 A.2d 23, 25 (1941); *see also Gilmore v. Alexander,* 268 Pa. 415, 112 A. 9, 11 (1920) (stating that evidence needed to rebut the presumption of payment may be direct or circumstantial "but must ... be so convincing as to justify the conclusion that the debt is not in fact paid."). In other words, in order to rebut the presumption, the creditor must *prove* by clear and convinc-

---

**20.** According to Rule 302 of the Federal Rules of Evidence, when a presumption under state law operates on a substantive element of a claim or defense (to which state law applies), then the effect of that presumption is governed by state law (rather than the Federal

Rules of Evidence). *See* Fed.R.Evid. 302 and advisory committee notes. Thus, the effect of the presumption under Pennsylvania law that debts more than twenty years old have been paid, in the instant diversity action, is governed by Pennsylvania law.

ing evidence that the debt, in fact, has not been paid. *See Wyatt*, 224 A.2d at 789 (collecting Pennsylvania Supreme Court cases). Whether the proof offered is sufficient to rebut the presumption depends on the particular facts and circumstances of each case, but it is for the court to decide "whether [the facts and evidence], if true, are sufficient to rebut the presumption [that the debt has been paid.]" *Sheafer v. Woodside*, 257 Pa. 276, 101 A. 753, 754 (1917).

■ In the instant case, since the certificate of deposit at issue matured over twenty years ago, Griffith, the creditor demanding payment, has the burden of rebutting the presumption that the debt has already been paid.[21] To rebut the

21. At the outset, Griffith argues that the presumption of payment should not be applied to certificates of deposit because of: (1) the unique nature of certificate of deposits; (2) the fact that presentation of a certificate of deposit is ordinarily the only obligation by law for payment of a certificate of deposit; (3) the fact that certificates of deposit are generally held for long periods of time; and (4) the "reasonable expectations of the marketplace" so dictate. Griffith, however, points to no Pennsylvania case or statutory law supporting his argument that certificates of deposit should be treated as an exception to the presumption, other than to point out that no Pennsylvania case has applied (or had the occasion to apply) the presumption to a certificate of deposit. *See Flanagan v. Fidelity Bank*, 438 Pa.Super. 516, 518 n. 2, 652 A.2d 930, 932 n. 2 (1995) (noting that the trial court had not applied the presumption of payment to the certificate of deposit at issue "apparently agreeing with [plaintiff] that the debt was less than twenty years old").

Although the court has found no case law addressing this precise issue, for the following reasons the court shall apply the presumption of payment to the certificate of deposit at issue in this case. First, as stated by the Pennsylvania Supreme Court, after the lapse of twenty years, the presumption of payment applies to "*all debts,* including judgments, not within the orbit of the Statute of Limitations." *Rosenbaum v. Newhoff*, 396 Pa. 500, 152 A.2d 763, 765 (1959) (emphasis added). By definition, a certificate of deposit is "a written acknowledgment by a bank of the receipt of a sum of money on deposit which it promises to pay the depositor ... whereby the relation of debtor and creditor between the bank and depositor is created." 5B Michie on Banks and Banking, § 313 at 467–68 (2002); *see also* 13 Pa. Cons.Stat. Ann. § 3104(j) ("A certificate of deposit is a note of the bank."). Therefore, because a certificate of deposit is a

debt of the bank, it is covered by the presumption.

Second, despite Griffith's suggestion to the contrary, application of the presumption is not preempted by the UCC. The Third Circuit has found that the UCC does not preempt all common law. *See New Jersey Bank, N.A. v. Bradford Securities Operations, Inc.*, 690 F.2d 339, 346 (3d Cir.1982) ("[T]he UCC does not purport to preempt the entire body law affecting the rights and obligations of parties to a commercial transaction."). Instead, Section 1–103 of the UCC provides that "general principles of law remain applicable unless otherwise preempted by the Code[.]" *Id.; see also* 13 Pa. Cons.Stat Ann. § 1103. Here, Griffith argues that application of the common law presumption of payment would supplant the statute of limitations provision applicable to certificates of deposits in Section 3118 of the Code. This is not the case. It has been long held by Pennsylvania courts that the presumption of payment differs from the statute of limitations in that the latter, if applicable, bars an action on the debt (without a new promise to pay), but the former is only prima facie and does not arise if there is affirmative proof that the debt has not been paid. *See Gilmore v. Alexander*, 268 Pa. 415, 112 A. 9, 11 (1920) (citing *Reed v. Reed*, 46 Pa. 239, 242 (Pa.1863)). Thus, application of the presumption would not bar all claims for payment of certificates of deposit outstanding for more than twenty years, but rather only those in which the claimant had no affirmative proof that the debt had not been paid (i.e., credible testimony of the depositor or other holder of the certificate who has knowledge that the debt has not been paid or other circumstantial evidence of nonpayment). The court submits that cases in which there would be no affirmative proof of nonpayment would be the exception rather than the rule. Thus, the court finds no reason to decline to apply the presumption under Pennsylvania law that

presumption, Griffith must offer direct or circumstantial evidence sufficient to "convince" the court that the certificate of deposit has not already been paid. Because Griffith has no *direct evidence* that the certificate of deposit has not been paid, the court must determine whether Griffith's circumstantial proof is sufficient to rebut the presumption of payment.[22]

As evidence, Griffith has offered the following items of proof: (1) that the certificate itself has not marked paid; (2) that it is Mellon's policy to mark certificates as paid or to destroy them when redeemed;[23] (3) the negative inference to be drawn from Mellon's lack of records showing that the certificate of deposit has been paid; and (4) the negative inference to drawn from the eight pages that are missing from Mellon's 1987 computer conversion report.[24] Based upon a review of the Pennsylvania case law, the court concludes that Griffith has not put forth sufficient evidence as a matter of law to rebut the presumption of payment.

First, as evidence that his certificate has not been paid, Griffith points to the facts that he holds the certificate of deposit which has not been marked paid or surrendered, and that it is Mellon's policy to mark certificates of deposit as paid or demand its surrender when certificates of deposit are redeemed. Because a bank acts at its peril in paying a certificate of deposit without requiring that it be surrendered, Griffith asks the court to draw the inference that the certificate at issue has not been paid. *See Yahn & McDonnell, Inc. v. Farmers Bank of Del.*, 708 F.2d 104, 113 (3d Cir.1983) (citing 5B Michie on Banks and Banking, § 326a at 257–58 (1973) for the proposition that a bank acts at its peril if it pays a certificate of deposit without its production and surrender); *see also Edelmann v. Chase Manhattan Bank, N.A.*, 861 F.2d 1291, 1293 n. 11 (1st Cir. 1988).[25]

■ This argument is without merit. Under Pennsylvania law, to rebut the presumption that a certificate of deposit (which matured more than twenty years ago) has already been paid, the creditor demanding payment must present evidence consisting of more than the instrument itself. *Wyatt*, 224 A.2d at 789 (quoting *Rosenbaum*, 152 A.2d at 766).

---

debts more than twenty years old have been paid to the certificate of deposit in this case.

**22.** The Supreme Court of Pennsylvania in *Grenet's Estate*, listed examples of the types of circumstantial proof that may be offered to rebut the presumption of payment: (1) that a relationship existed between the parties which would account for delay in collection by the creditor; (2) the debtor's inability to pay the debt; (3) that the creditor at all times had possession of the bond, note, or other instrument on which the claim was based; (4) that, after the creditor's death, no representative was appointed to whom the debt could have legally been paid; and (5) that the debtor made an "unqualified acknowledgment" of the debt within the twenty-year period (the latter, being the most effective type of proof). *Grenet's Estate*, 332 Pa. 111, 2 A.2d 707, 708 (1938). However, none of these types of evidence are present in this case.

**23.** *See* Def.'s M. for Summ. J. Exh. C at pp. 4–6 (Mellon's Corporate Financing Dept. Policies and Procedures Manual).

**24.** Mellon argues that any missing pages are merely "header pages" indicating the title of the report of the date the report was run and are routinely removed from the report. *See* Def.'s Reply to Pl's Supplemental Brief (citing Dep. of Linda Paul Yonish at 30–32; 41–42).

**25.** Note, however, that neither *Yahn* nor *Edelmann*, the two cases relied on by Griffith, apply Pennsylvania law. *Yahn*, 708 F.2d at 106 n. 3 (applying the Uniform Commercial Code as adopted in Delaware); *Edelmann*, 861 F.2d at 1301 (determining that New York law applied to the case).

Drawing an inference that the certificate of deposit was not paid, as suggested by Griffith, on the basis that the certificate of deposit (not marked paid) is in the hands of the creditor is the logical equivalent of relying on the instrument itself as proof that the debt has not been satisfied. Thus, reliance upon the certificate deposit itself in this case will not rebut the presumption that the certificate has been paid.

Second, Griffith asks the court to draw an inference *from* Mellon's lack of records and the eight missing pages of the 1987 conversion report produced by Mellon. Griffith suggests as a possibility that the certificate of deposit at issue here may have appeared as outstanding on Mellon's records (if the records were available now) or in the eight missing pages of the 1987 conversion report (assuming those eight pages were once in existence). Because Mellon has not produced these records in this litigation, it may be inferred that, if produced that they would be damaging to Mellon. Mellon, on the other hand, contends that the records are missing due to the lapse of almost three decades from the issuance of the certificate, limited storage space, and a document retention policy of seven years. In other words, Mellon counters Griffith's hypotheses as to why the records are missing with equally plausible explanations.

■ Under Pennsylvania law, "[w]here evidence which would properly be part of a case is within the control of the party in whose interest it would naturally be to produce it, and, without satisfactory explanation he fails to do so, the [trier of fact] may draw an inference that [the evidence] would be unfavorable to him." *Clark v. Phila. Coll. of Osteopathic Med.*, 693 A.2d 202, 204 (Pa.Super.1997) (quoting *Haas v. Kasnot*, 371 Pa. 580, 92 A.2d 171, 173 (1952)). Since Griffith has not negatived Mellon's equally plausible and otherwise

satisfactory explanations for the missing records nor has he produced evidence that Mellon destroyed the records in anticipation of this litigation or otherwise to impede the collection of the alleged debt, the court will not draw an adverse inference from the absence of certain records in this case. *Cf. In re Frey's Estate*, 342 Pa. 351, 21 A.2d 23, 25 (1941) (finding the fact that accounts filed by the decedent-debtor's committee did not show payments made on the Commonwealth's claim was insufficient evidence to overcome the presumption because the debts to the Commonwealth for decedent's care may have been otherwise paid); *Lefever's Estate*, 278 Pa. 196, 122 A. 273, 274 (1923) (finding that the evidence presented that the records of the creditor-bank did not show that the note had been paid was not sufficient evidence to overcome the presumption since the account may have remained open after payment by reason of neglect).

■ Moreover, Griffith has not explained the delay in enforcement of the debt. To rebut the presumption of payment by indirect or circumstantial evidence, the creditor must explain the reason why the debt owed for more than twenty years has not been collected. *See Oaks Fire Co.*, 132 A.2d at 196 (requiring as circumstantial or indirect evidence of payment "proof of circumstances tending to negative the likelihood of payment *and sufficiently accounting for the delay of the creditor*") (emphasis added). Although Griffith has explained why he did not assert his rights from 2001 to 2002, when he filed this lawsuit, Griffith has not (and cannot) explain why the certificate was not redeemed within the twenty-six years before he found it. *See, e.g., In Frey's Estate*, 21 A.2d at 25–26 (concluding that the Commonwealth (as creditor) had not rebutted the presumption because there was no evidence of a demand made upon the debtor's committee, evidence that demand

would be futile, or any evidence "satisfactorily accounting for the omission of the Commonwealth in ... attempting to enforce its claim"); *Jones v. Steinberg,* 178 Pa.Super. 517, 115 A.2d 803, 804–05 (1955) (concluding that defendant-creditors had not offered sufficient evidence to rebut the presumption that the mortgage had been paid in part because the creditors had not explained the delay in insisting upon payment); *see also Berkshire v. Federal Security Co.,* 199 F.2d 438, 444–45 (3d Cir.1952) (concluding that, because there was "ample indirect evidence of nonpayment, and of the mortgage holder's reasons for not enforcing his claim," the mortgage holder had rebutted that the presumption that the mortgage had not been paid); *Sandmann v. Old Delancey Bldg. & Loan Ass'n,* 184 Pa.Super. 470, 135 A.2d 819, 820 (1957) (finding the fact that the mortgage at issue was a second mortgage had sufficiently accounted for the creditor's delay in enforcing the mortgage).[26]

This lack of explanation is critically important to the theory underlying the presumption of payment. As noted by the Pennsylvania Superior Court in *Lefever's Estate:*

> The extraordinary laches exhibited by a delay of twenty years, during which no demand has been made for either any of the principal or any of the interest of a money obligation, can only be accounted for, where there is no explanation of the delay, on the theory that the [creditor] has received satisfaction of his debt in some way, or there is some good legal or equitable reason why he should not recover.

*Lefever's Estate,* 122 A. at 274. Given that Griffith may not rely upon the unmarked certificate of deposit alone to show payment of the debt, that the court will not draw an adverse inference from the absence of Mellon's long ago discarded records, and that there is no explanation for the twenty-seven year delay in collecting the debt, the court concludes that Griffith has failed to show by clear and convincing evidence that the debt allegedly evidenced by the certificate of deposit in his possession was not paid by Mellon.

Ultimately, the result obtained here is also consistent with the public policy purpose underlying the presumption of payment. The presumption is predicated on "a rule of convenience and policy, resulting from the necessary regard for the peace and security of society, and also for the debtor who could be called upon to defend stale claims at a time when witnesses are dead, and papers destroyed." *Sheafer,* 101 A. at 754. In the instant case, Griffith has brought a claim for enforcement of a certificate of deposit, more than twenty-seven years after the maturity of the certificate, at a time when all of Mellon's records from the year the certificate was issued have been destroyed in the regular course of business and witnesses' memories have receded. Because all of the public policy concerns noted by the Pennsylvania Supreme Court in *Sheafer* are implicated in this case, the court concludes that its finding that the presumption that the certificate has been paid has not been rebutted by the far from clear and convincing evidence offered by Griffith is the correct and just conclusion in this case.[27]

---

26. The fact that the debt has been paid is supported by the evidence put forth by the defendant. First, Mellon has produced evidence, through the depositions of Mellon employees, that Mellon paid all the bearer certificate of deposits issued by the bank in 1975. Their testimony is supported by the fact that the proceeds of the certificate of deposit do not appear anywhere on Mellon's books. At the summary judgment stage, however, the court will rely solely on the unrebutted presumption of payment for its ruling.

27. The presumption of payment need not arise if collection of the debt is barred by the statute of limitations, however. In the instant

case, Mellon contends that Griffith's claim for payment of the certificate of deposit is time-barred pursuant to section 3118 of Pennsylvania's Uniform Commercial Code (13 Pa. Cons. Stat. Ann. § 3118) and Pennsylvania's statute of repose for escheatable property (Pa.Stat. Ann.tit.72, § 1301.16).

Section 3118 of the UCC provides that:

An action to enforce the obligation of a party to a certificate of deposit to pay the instrument must be commenced within six years after demand for payment is made to the maker but, if the instrument states a due date and the maker is not required to pay before that date, the six-year period begins when a demand for payment is in effect and the due date has passed.

§ 3118(e). Since Griffith's action was commenced less than two years after Griffith first contacted Mellon about the certificate of deposit in February of 2001, and less than four months after he presented the certificate of deposit in person for payment, according to the plain language of the statute, Griffith's claim is not time-barred by section 3118(e).

Mellon, however, argues that under Pennsylvania law demand for payment must be made within a reasonable time. *See Bell v. Brady*, 346 Pa. 666, 31 A.2d 547, 549 (1943); *Leedom v. Spano*, 436 Pa.Super. 18, 647 A.2d 221, 227 n. 7 (Pa.Super.1994). The cases cited by plaintiff for that proposition are distinguishable, however. In *Bell*, the Pennsylvania Supreme Court was deciding the issue of when a receiver of a bank should have demanded payment from stockholders to trigger the statute of limitations under section 723 of the Banking Code of May 15, 1933. *Bell*, 31 A.2d at 549–50. In remanding the case to the lower court, the court observed that where demand is necessary for the commencing of the statute of limitations and "where the time of demand is within the control of the plaintiff, the demand must be made within a reasonable time." *Id.* The court reasoned that the plaintiff "cannot arrest the running of the statute by his own negligence or for his convenience." *Id.* at 550, 31 A.2d 547. The general proposition that demand should be made within a reasonable time was repeated in dicta in *Leedom*, a case in which the Pennsylvania Superior Court found that a cause of action against the guarantors of a mortgage debt accrued upon default and the governing statute of limitations (42 Pa. Cons.Stat. Ann. § 5527) began to run thereafter (rather then when demand for payment was later made). *Leedom*, 647 A.2d at 226–27.

However, unlike the statute of limitation provisions involved in those cases, section 3118(e) specifically provides that the statute of limitation for certificates of deposit does not begin running until demand is made. Furthermore, section 3118(e) contains no language limiting the time in which demand should be made. Mellon has cited (and the court has found) no case which applies the "reasonable time" for demand requirement from *Bell* to certificates of deposits. Because implying a "reasonable time" for demand requirement into section 3118 would contradict the plain meaning of the statute, and the court has discerned no clear guidance under Pennsylvania case law for doing so, the court declines to take a step that the Pennsylvania courts have not to apply the "reasonable time" for demand principle to the certificate of deposit at issue in this case. *Cf. Nimick v. Shuty*, 440 Pa.Super. 87, 655 A.2d 132, 136 (1995) ("This Court is without authority to insert a word into a statutory provision where the legislature has failed to supply it.") (quoting *Key Sav. & Loan Ass'n v. Louis John, Inc.*, 379 Pa.Super. 226, 549 A.2d 988, 991 (1988)).

Mellon also argues that Griffith's claim is barred under Pa. Stat. Ann. tit. 72, § 1301.16 (West Supp.2004), which provides, in pertinent part, that:

[T]he expiration of any period of time specified by statute or court order, during which an action may commenced or maintained, or could have been commenced or maintained, by the owner against the holder of the property, shall not . . . bar any action by the State Treasurer under this article, provided that:

(1) If any holder required to file a report under any act in effect prior to the effective date of this article, or under this article [relating to escheatment], has filed or files a report, no action shall be commenced or maintained against such holder unless it has been or is commenced within fifteen (15) years after such report has been or is filed.

§ 1301.16. Mellon argues that based on this statute, any action based on property that was listed on Mellon's 1982 "holder" or escheatable property report (or should have been listed on that report) was required to be filed on or before June 30, 1998, fifteen years after Mellon filed its holder report. As such, Mellon argues that Griffith's claim was filed more than four years too late. Mellon, however, misreads the statute. It is a clear from a plain reading of the statute that the limitation set forth in section 1301.16 is applicable to

### C. Is Prior Payment a Valid Defense against Griffith's Claim for Payment on the Certificate of Deposit?

Griffith next argues that even if the certificate of deposit was already paid, the prior payment does not extinguish his claim because: (1) he is the holder in due course of the certificate; and (2) prior payment only extinguishes the claim if made to a person entitled to enforce the certificate of deposit under section 3602 of the Uniform Commercial Code ("UCC"). *See* 13 Pa. Cons.Stat. Ann. § 3602(a) (West 1999). Each of these arguments will be addressed seriatim.

#### 1. Is Griffith entitled to "holder in due course" status?

If Griffith is a holder in due course, the defense that the certificate of deposit has already been paid cannot validly be asserted against him. *See* § 3305(b) (stating that "the right of a holder in due course to enforce the obligation of a party to pay an instrument . . . is not subject to [any defense the obligor would have available if the holder were enforcing a right to payment under simple contract]"). Section 3302(a) provides that a holder of an instrument is only a "holder in due course" if:

(1) the instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity; and

(2) the holder took the instrument:

(i) for value;

(ii) in good faith;

(iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series;

(iv) without notice that the instrument contains an unauthorized signature or has been altered;

(v) without notice of any claim to the instrument described in section 3306 (relating to claims to an instrument); and

(vi) without notice that any party has a defense or claim in recoupment described in section 3305(a) (relating to defenses and claims in recoupment).

§ 3302.

■ Mellon argues, and the court agrees, that Griffith is not a holder in due course for the obvious reason that, while he now literally holds the instrument, he did not take the certificate of deposit for value. Although Griffith claims to have bought the book in which he found the certificate of deposit, he admits that he did not know the certificate was in the book when he made the transaction.[28] Therefore, although Griffith may have paid for the book inside which the certificate of deposit was found, Griffith did not pay any value in return *for the certificate of deposit itself*. For that reason, Griffith is not entitled to holder in due course status under section 3302.[29]

---

actions by the State Treasurer, not actions brought by private litigants. The court has found (and Mellon has cited) no case law to suggest a contrary interpretation of the statute. Thus, Section 1301.16 does not bar Griffith's claim.

**28.** Dep. of Kim Griffith at 125, 203–05.

**29.** Mellon also argues that Griffith is not a holder in due course because he did not take the instrument "in good faith" and "without

notice that the instrument is overdue." Essentially, Mellon argues that circumstances in which such a valuable instrument was acquired, i.e. finding it in a discarded book of little value, put the Griffith on notice that the certificate was worthless and the maturity date should have alerted Griffith that the certificate was overdue. The court need not evaluate these arguments since Griffith clearly did not acquire the instrument for value and thus does not qualify for holder in due course status on that basis alone.

### 2. Payment to a person entitled to enforce the certificate of deposit as a defense

■ Next, Griffith argues that prior payment of the certificate of deposit is not a valid defense to his claim unless the prior payment was made to a person entitled to enforce the certificate of deposit. Under Section 3602 of the UCC, a negotiable instrument is considered paid if payment is made to a person "entitled to enforce the instrument," i.e. a holder.[30] Id. Payment to a holder discharges the liability of the party obliged to pay the instrument. Id. However, this discharge is not effective against a holder in due course without notice of the discharge. § 3601(b).

Griffith correctly notes that, because the certificate of deposit is payable to bearer, Mellon's obligation to pay the certificate is discharged only by payment to a person in possession of the certificate.[31] Griffith assumes incorrectly, however, that the debt could only be extinguished through payment to him because he is currently in possession of the certificate. To the contrary, because Griffith's certificate of deposit matured more than twenty years ago, Pennsylvania law presumes that the certificate was paid by the debtor to the creditor. See discussion supra at Part II.B. And, because the certificate in this case is payable to bearer (rather than an identifiable person), the Pennsylvania presumption of payment dictates the conclusion that the certificate was paid to the bearer of the instrument.

To rebut that evidentiary presumption, Griffith must show that the certificate was not paid to a person entitled to enforce the instrument within the previous twenty-six years before he found it. Because, as discussed above, Griffith only found the certificate at the end of January 2001 and has no evidence concerning whether the certificate was presented for payment by a previous holder of the instrument (nor does he have any information whatsoever concerning the history of the instrument), he cannot sustain this burden. Since the presumption has not been rebutted, the court must conclude that the certificate was paid to the bearer. That being the case, Mellon's liability was discharged and Griffith's claims seeking to force Mellon to pay the certificate of deposit and seeking recovery for the certificate's conversion must fail.

### III. CONCLUSION

For the foregoing reasons, Griffith's motion for partial summary judgment is denied and defendant's motion for summary judgment is granted.

An appropriate order follows.

### ORDER

**AND NOW,** this ___ day of August, 2004, it is hereby **ORDERED** that defendant's motion for summary judgment (doc. no. 26) is **GRANTED.**

**IT IS FURTHER ORDERED** that plaintiff's motion for partial summary judgment (doc. no. 24) is **DENIED.**

**AND IT IS SO ORDERED.**

---

**30.** A person is entitled to enforce an instrument if she is the holder of the instrument. § 3301(a).

**31.** This is the case except where a person can meet the requirements of section 3309(a), which provides for a process through which a person not in possession of the instrument may be entitled to enforce the instrument (i.e., the instrument is lost or destroyed). Under section 3309, a court may not enter judgment in favor of the such a person unless it finds that the entity required to make payment on the instrument is adequately protected from a claim by another person to enforce the instrument. § 3309(b).

*JUDGMENT*

**AND NOW**, this 4th day of August, 2004, pursuant to the order of August 4, 2004 and the accompanying memorandum, it is hereby **ORDERED** that **JUDGMENT** is **ENTERED** in favor of defendant and against plaintiff.

**AND IT IS SO ORDERED.**